LeRoy M. STRENKE and Juanita M. Strenke,
Plaintiffs-Respondents,

v.

Levi HOGNER and NAU Country Insurance
Company, Defendants-Appellants,†

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant.

Supreme Court

*No. 03–2527. Oral argument October 28, 2004.—Decided
March 18, 2005.*

2005 WI 25

(Also reported in 694 N.W.2d 296.)

† Motion for Reconsideration denied 6-23-2005

For the defendants-appellants there were briefs by *Karen J. Kingsley* and *Kingsley Law Office, P.A.*, St. Paul, MN, and oral argument by *Karen J. Kingsley*.

For the plaintiffs-respondents there were briefs by *Owen R. Williams* and *Owen R. Williams Trial Lawyers*, Amery; and *Lynn R. Laufenberg* and *Laufenberg & Hoefle, S.C.*, Milwaukee, and oral argument by *Lynn R. Laufenberg*.

An amicus curiae brief was filed by *Bruce R. Bachhuber* and *Hanaway Ross, S.C.*, Green Bay; and by *William C. Gleisner, III*, and *Law Offices of William C. Gleisner, III*, Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

An amicus curiae brief was filed by *Richard G. Niess* and *Coyne, Niess, Schultz, Becker & Bauer, SC*, Madison, on behalf of Civil Trial Counsel of Wisconsin.

¶ 1. ANN WALSH BRADLEY, J. This case is before the court on certification from the court of ap-

56

peals.[1] The defendants-appellants, Levi Hogner and NAU Country Insurance, assert that there was insufficient evidence to allow the issue of punitive damages to go to the jury. Additionally, they contend that the jury's award of punitive damages was excessive, thereby violating Hogner's constitutional right to due process.

¶ 2. In its certification, the court of appeals states the issues as follows:

(1) What proof is required for a plaintiff to recover punitive damages under the phrase "in an intentional disregard of the rights of the plaintiff" as provided in Wis. Stat. § 895.85(3) (2001–02)?[2]

 i. If *Wischer v. Mitsubishi Heavy Indus. Am., Inc.,* 2003 WI App 202, ¶ 40, 267 Wis. 2d 638, 673 N.W.2d 303, review granted (Wis. April 20, 2004) (Nos. 01–0724, 01–1031 & 01–2486), is correct, are there sufficient facts from which a jury could conclude Levi Hogner was aware his acts were "practically certain" to cause injury?

(2) Must a defendant's conduct giving rise to punitive damages have been directed at the specific plaintiff seeking punitive damages?

(3) If there was sufficient evidence to submit a punitive damages question to the jury, is the

---

[1] Levi Hogner and NAU Country Insurance appeal from the punitive damages portion of a judgment entered by the circuit court for Barron County, Frederick A. Henderson, Judge. Alternatively, they appeal from the circuit court's denial of a motion for remittitur or a new trial on the issue of punitive damages.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

jury's punitive damage award excessive or in violation of Hogner's due process rights?[3]

¶ 3. In response to the issues presented, we conclude that a person acts in an intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded. Furthermore, we determine that a defendant's conduct giving rise to punitive damages need not be directed at the specific plaintiff seeking punitive damages in order to recover under the statute.

¶ 4. However, we are equally divided on the question of whether the jury's punitive damage award was excessive and therefore in violation of Hogner's due process rights.[4] Accordingly, we affirm the judgment of the circuit court in part and remand to the court of appeals to decide this remaining issue consistent with

---

[3] The court of appeals also certified a fourth issue regarding Strenke's cross-appeal of whether the circuit court erred in bifurcating the compensatory damages from the punitive damages in this matter. Because we granted Strenke's motion for voluntary dismissal of his cross-appeal, however, we do not address the issue here.

[4] Although the certification of the court of appeals treats excessiveness and due process as separate inquiries, we view them as intertwined. The Supreme Court has observed that "[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (citing *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433 (2001); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 562 (1996)). *See also Trinity Evangelical Lutheran Church v. Tower Ins. Co.*, 2003 WI 46, ¶ 50, 261 Wis. 2d 333, 661 N.W.2d 789.

the principles set forth in *Trinity Evangelical Lutheran Church v. Tower Ins. Co.,* 2003 WI 46, 261 Wis. 2d 333, 661 N.W.2d 789.

## I

¶ 5. This case arises out of an automobile accident that occurred on October 16, 1998. At the time of the accident, LeRoy Strenke was traveling northbound on Highway 48 near Cumberland, Wisconsin. Levi Hogner was traveling southbound on the same road. As Strenke approached the intersection of Highway 48 and Golf Course Road, Hogner's vehicle turned left into the path of Strenke's car, injuring Strenke.

¶ 6. Hogner was charged with operating a motor vehicle while intoxicated. His blood alcohol content was tested to be .269%. He pled no contest to operating a motor vehicle while intoxicated, fifth offense. Hogner was sentenced to a year in jail, alcohol assessment, revocation of his driver's license for 36 months, and paid $3,041 in fines.

¶ 7. LeRoy and Juanita Strenke sued Hogner for negligence, seeking compensatory and punitive damages. Hogner and NAU (hereinafter collectively referred to as Hogner) stipulated to liability, but disputed the Strenkes' damages. The circuit court granted Hogner's motion to bifurcate the punitive damages claim from the compensatory damages claim. Subsequently, the jury awarded the Strenkes $2,000 in compensatory damages.

¶ 8. During the punitive damages trial, Hogner admitted that he had four prior convictions for driving while intoxicated. He further acknowledged that he consumed 16 to 18 twelve-ounce containers of beer

within a five-hour span on the night of the accident.[5] However, Hogner testified that he had never injured anyone when drinking and did not intend to injure anyone on the date in question.

¶ 9. At the close of the testimony, Hogner moved for a directed verdict, asserting that the plaintiffs had not presented a prima facie case that he acted maliciously toward Strenke or intentionally disregarded Strenke's rights. The circuit court denied the motion, reasoning that while Hogner did not act maliciously toward Strenke, the jury could conclude that Hogner intentionally disregarded Strenke's rights.

¶ 10. According to the circuit court, Strenke was a member of a class of motorists that had rights. It determined that a jury could find that Hogner's intentional acts of drinking 16–18 twelve-ounce containers of beer, and then driving while intoxicated, coupled with the fact that he had four prior OWI convictions, created a practical certainty that Strenke's rights would be disregarded.

¶ 11. The issue was submitted to the jury in two questions: (1) "Did Levi Hogner act maliciously toward LeRoy Strenke or in an intentional disregard of the rights of LeRoy Strenke?" and (2) "What sum, if any, do you assess against Levi Hogner as punitive damages?" The jury unanimously answered the first question "yes" and awarded the sum of $225,000, $200,000 more than the Strenkes had asked for in closing argument.

¶ 12. After the verdict, Hogner filed a motion for remittitur or, in the alternative, a new trial. The circuit court denied the motion, and Hogner appealed. The court of appeals certified the matter to this court.

---

[5] Hogner, a male, weighed 400 pounds at the time of the accident.

¶ 13. The focus of our inquiry is Wis. Stat. § 895.85, the punitive damages statute. Interpretation of a statute presents a question of law subject to independent appellate review. *Vill. of Lannon v. Wood-Land Contractors, Inc.,* 2003 WI 150, ¶ 12, 267 Wis. 2d 158, 672 N.W.2d 275 (citing *Meyer v. School Dist. of Colby,* 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999)). Likewise, whether there is sufficient evidence to submit the question of punitive damages to the jury is also a question of law that is subject to independent appellate review. *Lievrouw v. Roth,* 157 Wis. 2d 332, 344, 459 N.W.2d 850 (Ct. App. 1990).

### III

¶ 14. We begin our discussion with the statute at issue. Wisconsin Stat. § 895.85 was created by 1995 Wis. Act 17 and became effective on May 17, 1995. Subsection (3) of the statute provides:

> (3) STANDARD OF CONDUCT. The plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff.

¶ 15. Prior to the enactment of Wis. Stat. § 895.85(3), the common law established the standard of conduct governing the imposition of punitive damages. Under it, punitive damages could be awarded for "outrageous" conduct. *Sharp v. Case Corp.,* 227 Wis. 2d 1, 21, 595 N.W.2d 380 (1999). A person's conduct was "outrageous" if the person acted "either maliciously or in wanton, willful and in reckless disregard of the plaintiff's rights." *Id.*

¶ 16. The words of Wis. Stat. § 895.85(3) derive, in large part, from the common law. The major difference between the two is that the legislature replaced the common law language of "wanton, willful and reckless" with the term "intentional." We address the import of this change in answering the first certified question: what proof is required for a plaintiff to recover punitive damages under the phrase "in an intentional disregard of the rights of the plaintiff" as provided in Wis. Stat. § 895.85(3)?

¶ 17. In *Wischer*, 267 Wis. 2d 638, ¶ 40, the court of appeals concluded that to intentionally disregard the rights of the plaintiff, a defendant was unambiguously required to have (1) a general intent to perform an act, and (2) either (i) a specific intent to cause injury by that act or (ii) knowledge that the act is practically certain to result in injury.

¶ 18. Relying on the *Wischer* decision, Hogner argues that the issue of punitive damages was improperly submitted to the jury in this case. He contends that no evidence exists that he knew that his acts were practically certain to result in Strenke being injured. As a result, he asserts that his intentional acts of drinking a large quantity of alcohol and then driving were not sufficient to prove that he intentionally disregarded Strenke's rights.

¶ 19. While we agree with Hogner's reading of *Wischer*, we disagree with the *Wischer* court's interpretation of Wis. Stat. § 895.85(3). The legislature did not intend an "intentional disregard of the rights of the plaintiff" to require "intent to cause injury to the plaintiff." Rather, it reaffirmed the common-law principle that punitive damages can be premised on conduct that is a "disregard of rights." However, the legislature chose the word "intentional" to describe the heightened

state of mind required of the defendant who disregards rights, instead of the common law's description of "wanton, willful and reckless." Our interpretation of Wis. Stat. § 895.85(3) is supported by the language of the statute, the legislative history, and the common law meaning of the phrase in question. We examine each in turn.

¶ 20. When interpreting a statute, we look first to its language. *Vill. of Lannon,* 267 Wis. 2d 158, ¶ 13. Here, the words at issue are: "in an intentional disregard of the rights of the plaintiff." Wis. Stat. § 895.85(3). The statute says nothing about "injury," or "harm," intentional or otherwise. Instead, it simply requires that the defendant engaged in conduct that constituted a "disregard of rights" that was "intentional." *Id.*

¶ 21. If the legislature had intended to specify an "intent to injure" requirement, it could have easily done so. Indeed, there was another statute enacted in the same legislative session in which Wis. Stat. § 895.85(3) was enacted that demonstrates this point. Wisconsin Stat. § 895.525(4m) was created by 1995 Wis. Act 447 and allows liability of contact sports participants only "if the participant who caused the injury acted recklessly or with *intent to cause injury.*" (Emphasis added.) There is no comparable language in Wis. Stat. § 895.85(3). The words "intent to cause injury" appear nowhere in the text. Rather, the object of the intent as set forth in the text is the "disregard of the rights of the plaintiff." This court will not insert the phrase "intent to cause injury" into the statute. To do so here would alter the focus of the statute and jettison the legislative intent.

¶ 22. Although Hogner attempts to bolster his argument through the use of legislative history, his

effort misses the mark. Both parties agree that the legislature tried to make it harder to recover punitive damages by passing Wis. Stat. § 895.85(3). We too subscribe to this construction. The analysis by the Legislative Reference Bureau indicates that the bill "revises the standards and procedures for awarding punitive damages in certain civil cases." *See* Drafting Records of 1995 Wis. Act 17. To this end, the legislature replaced the common law language of "wanton, willful and reckless" with "intentional" to modify "disregard of the plaintiff's rights."

¶ 23. Thus, the question before this court is how much harder did the legislature make it? There is nothing in the drafting records of Wis. Stat. § 895.85(3) to suggest that the legislature intended to equate "intentional disregard of rights" with intent to injure or cause harm, as Hogner suggests. Furthermore, in referencing the floor debate on Senate Bill 11, which later evolved into Wis. Stat. § 895.85(3), Hogner ignores the most pointed exchange between legislators, which sheds light on the issue before this court.

¶ 24. Responding to Rep. Robson's question of whether the new law would allow the imposition of punitive damages against an intoxicated surgeon who amputates the wrong leg, Rep. Green, a sponsor of the bill, answered in the affirmative, a position that is difficult if not impossible to reconcile with Hogner's interpretation of the statute. Green stated:

> First off, I do believe that the current standard we are talking about in this bill would cover that situation. It is not the — you don't have to prove an intent that the act took place. You have to prove instead, if you look at it, maliciousness which is the current standard or

> intentional disregard for plaintiff's rights — *not the action being intentional, but disregard for plaintiff's rights.*

(Emphasis added.)

¶ 25. Examining Wis. Stat. § 895.85(3), it is evident that the legislature relied heavily on the common-law standard. Under the common law, punitive damages could be awarded if the defendant acted (1) maliciously, or (2) in wanton, willful and in reckless disregard of the plaintiff's rights. *Sharp,* 227 Wis. 2d at 21.

¶ 26. The first category included conduct that was intended to cause the injury. Malicious conduct was defined as follows: " '[a]cts are malicious when they are the result of hatred, ill will, a desire for revenge, or inflicted under circumstances where insult or injury is intended.' " *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 483, 464 N.W.2d 654 (1991) (quoting Wis JI—Civil 1707 (1990)).

¶ 27. The second category, however, did not require an intent to cause injury. *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 267, 294 N.W.2d 437 (1980). In *Fahrenberg v. Tengel,* 96 Wis. 2d 211, 221, 291 N.W.2d 516 (1980), the court explained, "[t]o sustain an award for punitive damages, the law does not require a specific finding of an intentional and ruthless desire to injure, vex or annoy. The injured party need only show a wanton, willful or reckless disregard of the rights of others on the part of the wrongdoer." Similarly, in *Sharp,* 227 Wis. 2d at 21, the court observed, "[a] person's conduct is wanton, willful, and in reckless disregard of the plaintiff's rights when it demonstrates an indifference on the person's part to the consequences of his or her actions, even though he or she may not

intend insult or injury." This second category is where the change occurred. It now requires an intentional disregard of rights.

¶ 28. Not only did the legislature retain two categories of conduct, but it also used the specific common law phrase in question to describe the new second category—"disregard of rights." The legislature is presumed to act with full knowledge of existing case law when it enacts a statute. *Czapinski v. St. Francis Hosp.*, 2000 WI 80, ¶ 22, 236 Wis. 2d 316, 613 N.W.2d 120 (citing *Ziulkowski v. Nierengarten*, 210 Wis. 2d 98, 104, 565 N.W.2d 164 (1997)). A statute must be interpreted in light of the common law and the scheme of jurisprudence existing at the time of its enactment. *State v. Hansen*, 2001 WI 53, ¶ 19, 243 Wis. 2d 328, 627 N.W.2d 195 (citing *In re Custody of D.M.M.*, 137 Wis. 2d 375, 389–90, 404 N.W.2d 530 (1987)).

¶ 29 Statutes in derogation of the common law are to be strictly construed. *Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81, ¶ 25, 244 Wis. 2d 758, 628 N.W.2d 833 (citing *Maxey v. Redev. Auth. of Racine*, 94 Wis. 2d 375, 399, 288 N.W.2d 794 (1980)). "A statute does not change the common law unless the legislative purpose to do so is clearly expressed in the language of the statute." *Id.* "To accomplish a change in the common law, the language of the statute must be clear, unambiguous, and peremptory." *Id.* Because there is no such language in Wis. Stat. § 895.85(3) regarding the phrase "disregard of rights," we look to the common law to shed light on legislative intent.

¶ 30. Under the common law punitive damage cases, the word "rights" was used to mean just that—

rights of the plaintiffs or others recognized by law. These can include, for example, such rights as property rights, *City of West Allis v. WEPCO,* 2001 WI App 226, 248 Wis. 2d 10, ¶ 26, 635 N.W.2d 873, the right to be protected from an excess verdict, *Allied Processors, Inc., v. Western Nat'l Mut. Ins. Co.,* 2001 WI App 129, ¶ 38, 246 Wis. 2d 579, 603, 629 N.W.2d 329, the right to be safe from physical injury, *Sharp,* 227 Wis. 2d at 21, or the right to a thorough investigation and evaluation of a claim, *Majorowicz v. Allied Mut. Ins. Co.,* 212 Wis. 2d 513, 533, 569 N.W.2d 472 (1997). In all of these instances, disregarding such rights resulted in punitive damages for the plaintiff.

¶ 31. A review of our common law reveals that the phrase "disregard of rights" described a type of conduct that involved an indifference on the defendant's part to the consequences of his or her actions. *Sharp,* 227 Wis. 2d at 21. The phrase did not mean the harm or injury suffered. Rather, it referred to conduct, which in turn resulted in the harm or injury suffered. *See id.* ("Punitive damages may be awarded in product liability suits if the plaintiff proves by clear and convincing evidence that the harm suffered was the result of the manufacturer's reckless disregard for the safety of product users, consumers or others who might be harmed by the product.")

¶ 32. This interpretation is reiterated in the case law. For example, in *Brown v. Maxey,* 124 Wis. 2d 426, 434, 437, 369 N.W.2d 677 (1985), a premises liability case, the court did not require an intent to injure in order to determine that conduct was a "conscious disregard of rights." Moreover, in *Majorowicz,* 212 Wis. 2d at 533, a bad faith case, the court ruled that the insurer's conduct could lead the jury to find an "inten-

tional disregard" of the plaintiff's rights even though there was no evidence of intent to cause injury.

¶ 33. Having examined the language of the statute, the legislative history, and the common law meaning of the phrase in question, we turn now to our interpretation of Wis. Stat. § 895.85(3). As noted above, the legislature tried to make it harder for plaintiffs to recover punitive damages. It accomplished this goal by replacing the common law language of "wanton, willful and reckless" with the term "intentional." In doing so, however, there is no indication that the legislature intended to alter the focus of punitive damages from the nature of the wrongdoer's conduct to the likelihood of an injury and requiring a certain probability of injury. Such a dramatic change would have to be clearly expressed in the language of the statute. *Fuchsgruber,* 244 Wis. 2d 758, ¶ 25. As there is no clear, unambiguous, and peremptory language in Wis. Stat. § 895.85(3), this court cannot impute such intent. *Id.*

¶ 34. Admittedly, part of the problem with interpreting the legislature's change stems from the fact that the words "intentional" and "disregard" do not easily combine. Still, we are not persuaded by the interpretation of the *Wischer* court, which inserted words into the statute. Accordingly, we overrule that decision here. We instead conclude that the legislature intended to require an increased level of consciousness and deliberateness at which the defendant must disregard the plaintiff's rights in order to be subject to punitive damages.

¶ 35. Because the word "intentional" is not defined in the statute, we look to other sources for guidance. Restatement (Second) of Torts § 8A (1965) states that the word "intent" denotes "that the actor desires to cause the consequences of his act, or that he

believes that the consequences are substantially certain to result from it." In *Shepard v. Outagamie County Circuit Court,* 189 Wis. 2d 279, 286–87, 525 N.W.2d 764 (Ct. App. 1994), the court defined "intentional" as follows:

> The legal definition of "intentional" is essentially the same, whether found in tort law or in criminal law . . . . A person may be said to have intentionally caused the result where the result is substantially certain to occur from the actor's conduct. (Citation omitted.) The definition of "intentionally" in the criminal code, § 939.23(3), STATS., is similar: "Intentionally" means that the actor either has specified a purpose to do the thing or cause the result specified, or is aware that his conduct or her conduct is practically certain to cause that result.

¶ 36. In light of these authorities, we determine that a result or consequence is intentional if the person acts with a purpose to cause the result or consequence or is aware that the result or consequence is substantially certain to occur from the person's conduct.[6] The result or consequence here is the disregard of rights. Applying this definition to Wis. Stat. § 895.85(3), we conclude that the statute's requirement that the defendant act "in an intentional disregard of the rights of the

---

[6] As *Shepard v. Outagamie County Circuit Court,* 189 Wis. 2d 279, 287, 525 N.W.2d 764 (Ct. App. 1994) noted, the definition of "intentional" found in tort is "similar" to the criminal law definition of "intentional." In this opinion, we do not use the "practically certain" language of the criminal statute, but rather retain the "substantially certain" language cited above. This change does not affect the jury verdict in this case. For use of the term "substantially certain," see Restatement (Second) of Torts § 8A (1965); *Gouger v. Hardtke,* 167 Wis. 2d 504, 512, 482 N.W.2d 84 (1992).

plaintiff" necessitates that the defendant act with a purpose to disregard the plaintiff's rights or be aware that his or her conduct is substantially certain to result in the plaintiff's rights being disregarded.

¶ 37. Our analysis is consistent with that of the Civil Jury Instructions Committee. The Committee drafted Wis JI—Civil 1707.1 to give the following meaning to the statutory phrase: "A person acts in an intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights or is aware that his or her acts are practically certain to result in the plaintiff's rights being disregarded." Notably, there is no requirement of intent to injure or cause harm in the instruction. Rather, the focus is on the disregard of rights.

¶ 38. Thus, in response to the first question certified by the court of appeals, we conclude that a person acts in an intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded. This will require that an act or course of conduct be deliberate. Additionally, the act or conduct must actually disregard the rights of the plaintiff, whether it be a right to safety, health or life, a property right, or some other right. Finally, the act or conduct must be sufficiently aggravated to warrant punishment by punitive damages.

¶ 39. In recognizing this heightened standard, we are mindful that some cases which have previously qualified for punitive damages under the common law will no longer qualify under Wis. Stat. § 895.85(3). Under the prior common law standard, it was accepted that "the vast majority of negligence cases do not give

70

rise to the remedy of punitive damages." *Brown,* 124 Wis. 2d at 432. The legislature intended with the heightened standard that now there would be even fewer negligence cases giving rise to punitive damages.

¶ 40. Accordingly, we expect circuit courts to serve as gatekeepers before sending a question on punitive damages to the jury. We stated this gatekeeper function in *Bank of Sun Prairie v. Esser,* 155 Wis. 2d 724, 735, 456 N.W.2d 585 (1990) (citing *Topolewski v. Plankinton Packing Co.,* 143 Wis. 52, 70, 126 N.W. 554 (1910)) as follows:

> The circuit court should not submit the issue of punitive damages to the jury in the absence of evidence warranting a conclusion to a reasonable certainty that the party against whom punitive damages may be awarded acted with the requisite . . . conduct.

¶ 41. The court of appeals in *Lievrouw,* 157 Wis. 2d at 344, restated this articulation of the gatekeeper's function as follows:

> Stated another way, a question on punitive damages may not be given to the jury unless the trial court concludes that a reasonable jury could find from the evidence that entitlement to punitive damages has been proven by the middle burden of proof, "clear and convincing evidence."

¶ 42. When serving in this capacity, we remind circuit courts that punitive damages are not recoverable if the wrongdoer's conduct is merely negligent. *Wangen,* 97 Wis. 2d at 275. Furthermore, not every drunk driving case will give rise to punitive damages. Only when the conduct is so aggravated that it meets

71

the elevated standard of an "intentional disregard of rights" should a circuit court send the issue to a jury.

## IV

¶ 43. We turn next to the second question in the court of appeals' certification: must a defendant's conduct giving rise to punitive damages have been directed at the specific plaintiff seeking punitive damages?

¶ 44. As noted above, Wis. Stat. § 895.85(3) provides:

> (3) STANDARD OF CONDUCT. The plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff.

¶ 45. The word "plaintiff" is defined as "the party seeking to recover punitive damages." Wis. Stat. § 895.85(1)(c). From this definition, the federal district court in *Boomsma v. Star Transport, Inc.*, 202 F. Supp. 2d 869, 881 (E.D. Wis. 2002) opined that in order for punitive damages to be available, the defendant must have intended to harm a particular plaintiff.

¶ 46. In *Boomsma*, representatives of the estates of five decedents killed in a motor vehicle accident sued a trucking company and its employee driver. The court surmised that, "the thing which must be practically certain is not harm in the abstract, or even harm to a certain class of people (e.g., other drivers on the road), but harm *to the plaintiff*." *Id.* Relying on this interpretation, Hogner argues that Strenke's claim must fail, as no evidence exists that Hogner's conduct was specifically directed at Strenke.

¶ 47. In its certification, the court of appeals questioned the soundness of the *Boomsma* approach. Certification by Court of Appeals of Wisconsin, *Strenke*

v. *Hogner*, 03–2527, filed May 18, 2004, p. 5. It feared that such a literal reading of the statute would defeat the purpose of punitive damages of punishing wrongdoers and deterring similar conduct in the future. *Id.*, p. 6. The court then cited several examples to illustrate the dramatic curtailment that the "particular plaintiff" rule would have on situations where punitive damages were always understood to play an important role:

> Consider where a drug manufacturer publicly distributes a drug it knows is practically certain to cause harm. Even though the class of people who use the drugs are harmed and that the manufacturer knew this was practically certain to occur, the drug manufacturer could simply use the plain language of § 895.85(3)—language *Wischer* concluded was unambiguous—to preclude liability, arguing that it did not intend or know there was a practical certainty that *those particular plaintiffs* who are seeking to recover punitive damages would be harmed. Also, consider where a person fires a gun into a crowd of people and injures a stranger. How could the person have awareness that it is practically certain he or she would cause injury to someone he or she never knew?

*Id.* (Emphasis in original.)

¶ 48. We share the court of appeals' concern with the *Boomsma* interpretation and reject it here.[7] Laws must be interpreted, considering the legal and practical consequences, to avoid unreasonable and absurd results. *State v. Jennings*, 2003 WI 10, ¶ 11, 259 Wis. 2d 523, 657 N.W.2d 393. It is doubtful the legislature

---

[7] We note that we are not alone in rejecting the *Boomsma* approach. At oral argument in *Wischer v. Mitsubishi Heavy Indus. Am., Inc.*, 2005 WI 26, 279 Wis. 2d 4, 694 N.W.2d 320, counsel for Mitsubishi characterized the interpretation as "extreme."

intended to afford greater protection to a defendant who intentionally disregarded the rights of a great many unspecified individuals than a defendant who intentionally disregarded the rights of one particular individual. Our conclusion is supported by both the common law and legislative history.

¶ 49. Under the common law's "disregard of rights" standard, the "disregard" was "of the plaintiff's rights." *Sharp*, 227 Wis. 2d at 21. Despite this fact, punitive damages were available in products liability cases where no showing was made that the manufacturer's conduct was specifically directed at the particular plaintiff. *E.g.*, *Sharp*, 227 Wis. 2d 1; *Walter v. Cessna Aircraft Co.*, 121 Wis. 2d 221, 358 N.W.2d 816 (Ct. App. 1984); *Wussow v. Commercial Mechanisms, Inc.*, 97 Wis. 2d 136, 293 N.W.2d 897 (1980). Instead, it was enough to show "by clear and convincing evidence that the harm suffered was the result of the manufacturer's reckless disregard for the safety of product users, consumers or others who might be harmed by the product." *Sharp*, 227 Wis. 2d at 21.

¶ 50. The silence of the legislative history on this matter is also significant. If the legislature had truly intended such a sea change in the law, we would expect to find something in the history of Wis. Stat. § 895.85(3) to indicate that. Yet, at oral argument, counsel for Hogner acknowledged that she could not point to anything in the drafting records to support her position. Our examination of the legislative history yields the same result.

¶ 51. Accordingly, for the reasons stated above, we determine that a defendant's conduct giving rise to punitive damages need not be directed at the specific plaintiff seeking punitive damages in order to recover under the statute.

¶ 52. Having answered the first two questions of the certification, we turn finally to the third question: if there was sufficient evidence to submit a punitive damages question to the jury, is the jury's punitive damage award excessive and therefore in violation of Hogner's due process rights? We begin by considering the sufficiency of the evidence.

¶ 53. Under the common law standard, drunk driving was the type of conduct that could support an award of punitive damages in an appropriate case. *Lievrouw,* 157 Wis. 2d at 347. In *Lievrouw,* the court of appeals observed that, "[d]runk driving is a terrible scourge," and "[i]ntentionally driving while alcohol-impaired is the type of outrageous conduct that punitive damages should punish and can deter." *Id.* at 345–46.

¶ 54. Although the standard of conduct for punitive damages has been heightened with Wis. Stat. § 895.85(3), we are satisfied that there was sufficient evidence that Hogner was aware that his conduct was substantially certain to cause a disregard of Strenke's rights. There are several reasons for this.

¶ 55. First, Hogner's acts of drinking 16 to 18 twelve-ounce containers of beer and then driving while intoxicated were deliberate. As noted by the circuit court, "nobody was holding him down and pouring these [drinks] down his throat involuntarily . . . ." Similarly, there is no evidence in the record that anybody made Hogner get behind the wheel of his car that night.

¶ 56. Second, Hogner's act of drinking and driving disregarded Strenke's right to safety in using the highway with other motorists in sober command of their

75

vehicles. While Hogner may not have targeted Strenke personally, his intentional disregard of the rights of *all* motorists on the road necessarily implicated Strenke's rights. The fact that his blood alcohol content was tested to be .269% confirms this.

¶ 57. Third, Hogner's conduct was sufficiently aggravated to warrant punishment by punitive damages. Here, Hogner admitted that he had four prior convictions for driving while intoxicated. He further acknowledged that he consumed 16 to 18 twelve-ounce containers of beer within a five-hour span on the night of the accident.

¶ 58. Thus, we conclude that there was sufficient evidence to submit the issue of punitive damages to the jury. However, we are equally divided on the question of whether the jury's punitive damage award was excessive and therefore in violation of Hogner's due process rights. Chief Justice Shirley S. Abrahamson, Justice Ann Walsh Bradley, and Justice Patience D. Roggensack would answer the question in the negative; Justice Jon P. Wilcox, Justice N. Patrick Crooks, and Justice Louis B. Butler, Jr. would answer the question in the affirmative. Justice David T. Prosser, Jr. did not participate. Accordingly, we remand this matter to the court of appeals to decide the issue consistent with the principles set forth in *Trinity,* 261 Wis. 2d 333.

## VI

¶ 59. In sum, we conclude that a person acts in an intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disre-

garded. Furthermore, we determine that a defendant's conduct giving rise to punitive damages need not be directed at the specific plaintiff seeking punitive damages in order to recover under the statute.

¶ 60. However, we are equally divided on the question of whether the jury's punitive damage award was excessive and therefore in violation of Hogner's due process rights. Accordingly, we affirm the judgment of the circuit court in part and remand to the court of appeals to decide this remaining issue consistent with the principles set forth in *Trinity*, 261 Wis. 2d 333.

*By the Court.*—The judgment of the circuit court is affirmed in part and the cause is remanded to the court of appeals.

¶ 61. DAVID T. PROSSER, J. did not participate.

¶ 62. JON P. WILCOX, J. (*concurring*). While I agree with the ultimate result the majority reaches, the majority's analysis of Wis. Stat. § 895.85(3) (2001–02)[1] ignores accepted canons of statutory construction, misconstrues our common law relating to punitive damages, and adopts an interpretation of § 895.85(3) that is virtually identical to, if not lower than, the common-law standard for punitive damages. In doing so, the majority turns on its head what the legislature clearly intended as a heightened standard governing the recovery of punitive damages.

¶ 63. To answer the questions certified by the court of appeals, I would hold as follows: 1) Section 895.85(3) requires that the defendant intend the consequences of his actions—that is, intend to harm the plaintiff—in order to be liable for punitive damages; 2)

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

Pursuant to § 895.85(1)(c), the defendant's conduct must be directed at the person seeking to recover punitive damages; and 3) There exists sufficient evidence for a reasonable jury to conclude that the requirements of § 895.85 have been met in this case. Therefore, I respectfully concur.

## I

¶ 64. Section 895.85 was enacted pursuant to 1995 Wis. Act 17 as part of a broader, comprehensive tort reform package passed by the legislature.[2] Section 895.85 significantly modified the circumstances under which punitive damages could be awarded. It is widely accepted that § 895.85(3) "was clearly intended to be more narrow than the case law standard . . . ." Wis JI-Civil 1707.1 cmt. 2 (1995). "The intent of the legislature to heighten the standard for recovery of punitive damages could not be clearer. . . . It is clear from the text of the statute that Section 895.85 marks a significant departure from the common law standard." *Boomsma v. Star Transp., Inc.*, 202 F. Supp. 2d 869, 880 (E.D. Wis. 2002).

¶ 65. Under the common law, punitive damages were allowed in two categories of tort cases. Punitive damages were allowed if the defendant "acted maliciously." *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 300, 294 N.W.2d 437 (1980). However, malicious conduct was not required, and punitive damages were also available if there was "a showing of wanton, wilful, or reckless disregard of the plaintiff's rights." *Kink v. Combs*, 28

[2] *See* Wisconsin Legislative Council Staff, *Information Memorandum 96–25: Legislation Relating to Liability and Insurance Enacted During the 1995–96 Legislative Session* (July 26, 1996).

Wis. 2d 65, 79, 135 N.W.2d 789 (1965). This court used the shorthand " 'outrageous' " to refer to both types of conduct giving rise to an award of punitive damages. *Brown v. Maxey,* 124 Wis. 2d 426, 433, 369 N.W.2d 677 (1985)(quoting *Wangen,* 97 Wis. 2d at 300).

¶ 66. In contrast to the common-law standard, § 895.85(3) provides: "The plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." Thus, the legislature removed the possibility of awarding damages in cases where the defendant "willfully, wantonly, or recklessly disregarded the plaintiff's rights" and instead required that there be a showing that the defendant acted in an "intentional disregard of the rights of the plaintiff." The dispute in this case concerns the proper meaning of the phrase "intentional disregard of the rights of the plaintiff."

¶ 67. Pursuant to Wis. Stat. § 990.01, when construing a statute, "technical terms or legal terms of art are given their accepted legal or technical definitions." *Wis. Citizens Concerned for Cranes and Doves v. DNR,* 2004 WI 40, ¶ 6, 270 Wis. 2d 318, 677 N.W.2d 612. Further, "[t]he legislature is presumed to act with knowledge of the existing case law." *Maurin v. Hall,* 2004 WI 100, ¶ 75, 274 Wis. 2d 28, 682 N.W.2d 866 (citing *Reiter v. Dyken,* 95 Wis. 2d 461, 471, 290 N.W.2d 510 (1980)). As noted, the common law allowed punitive damages upon "a showing of wanton, wilful, or reckless disregard of the plaintiff's rights." *Kink,* 28 Wis. 2d at 79. The majority admits that the phrase "wanton, willful, or reckless disregard of the plaintiff's rights" had an accepted legal meaning under the common law, majority op., ¶¶ 25–28, and that the legislature "relied heavily" on this meaning when drafting § 895.85(3).

79

Majority op., ¶ 25. Thus, it is necessary to understand the meaning of the common-law standard before addressing the effect of § 895.85 on the availability of punitive damages.

¶ 68. As the following discussion will demonstrate, the common law referred to "a disregard of the plaintiff's rights" as a shorthand for describing all of the various types of harm giving rise to punitive damages when coupled with the appropriate mental state of the defendant. However, the common law required more than a showing that the defendant recklessly disregarded the plaintiff's "rights" in the abstract in each particular case. *Contra* majority op., ¶ 30. Rather, the phrase "willful, wanton, or reckless disregard of rights" meant that the defendant engaged in a volitional act with knowledge or appreciation that his conduct created an unreasonable risk of harm and that there was a strong probability that harm would result. Thus, "a disregard of the plaintiff's rights" referred to the harm caused by the defendant's conduct and "willful, wanton, or reckless" referred to the defendant's knowledge of the likelihood of harm—his knowledge that such conduct created a "strong probability" that harm would result. While "an intent to injure" was not required, the common law did specifically link the defendant's conduct with his knowledge of the likelihood of harm.

¶ 69. As noted, punitive damages were available under Wisconsin common law if the plaintiff demonstrated "malicious conduct or willful or wanton conduct in reckless disregard of rights or interests." *Wangen,* 97 Wis. 2d at 267. In summarizing the various common-law standards for the imposition of punitive damages, including Wisconsin's, Professors Ghiardi and Kircher, in their treatise on punitive damages, commented:

The conduct which the varying terms describes is generally of two distinct types. With the first the defendant desires to cause the harm sustained by the plaintiff, or believes that the harm is substantially certain to follow the conduct. *With the second the defendant knows, or should have reason to know, not only that the conduct creates an unreasonable risk of harm, but also that there is a strong probability, although not a substantial certainty, that the harm will result* and, nevertheless, proceeds with the conduct in reckless or conscious disregard of the consequences.

Neither form of conduct, therefore, involves mere inadvertence or what, in the traditional tort sense, would be called ordinary negligence.

James D. Ghiardi & John J. Kircher, 1 *Punitive Damages L. & Prac.* § 5.01, at 8 (1996)(emphasis added).

¶ 70. This passage from the Ghiardi and Kircher treatise on punitive damages, which was present in previous editions, was relied on and cited with approval numerous times by this court when discussing the circumstances under which punitive damages could be awarded under Wisconsin common law. *See, e.g., Loveridge v. Chartier,* 161 Wis. 2d 150, 188, 468 N.W.2d 146 (1991); *Maxey,* 124 Wis. 2d at 433–34; *Lundin v. Shimanski,* 124 Wis. 2d 175, 197 n.14, 368 N.W.2d 676 (1985). It was also incorporated into the commentary of our jury instructions describing the requisite conduct for punitive damages in 1986 and remained until the passage of 1995 Wis. Act 17.[3]

¶ 71. In *Wangen,* when describing the type of conduct necessary to justify punitive damages, we stated:

---

[3] *See* Wis JI-Civil 1707 (1986); Wis JI-Civil 1707 (1989); Wis JI-Civil 1707 (1990); Wis JI-Civil 1707 (1991); Wis JI-Civil 1707 (1992); Wis JI-Civil 1707 (1994); Wis JI-Civil 1707 (1995).

> "[S]omething must be shown over and above the mere breach of duty for which compensatory damages can be given. That is, a showing of a bad intent deserving punishment, or something in the nature of special ill will towards the person injured, or a wanton, *deliberate disregard of the particular duty then being breached, or that which resembles gross as distinguished from ordinary negligence.*"

*Wangen,* 97 Wis. 2d at 268 (quoting *Meshane v. Second Street Co.,* 197 Wis. 382, 387, 222 N.W. 320 (1928)) (emphasis added).[4] In addition, we noted that the requisite conduct for punitive damages was similar to "conduct falling within the old gross negligence concept," a concept that we had previously described as " 'a willingness to harm although such harm may not have been intended,' or *'willingness to perpetrate injury,'* or *'a purpose to take known chances of perpetrating an injury.'* " *Id.* at 274 (quoting *Bielski v. Schulze,* 16 Wis. 2d 1, 14–15, 114 N.W.2d 105 (1962)) (emphasis added).[5]

---

[4] *See also* James D. Ghiardi, *Punitive Damages in Wisconsin,* 60 Marq. L. Rev. 753, 758 (1977) (equating the phrase "wanton, wilful, or reckless disregard of the plaintiff's rights" with "what was formerly categorized as gross negligence").

[5] Professor Prosser noted that under the common law, "wilful," "wanton," or "reckless" conduct was sufficient to justify punitive damages. William L. Prosser, *Handbook of The Law of Torts* § 34, at 184 (4th ed. 1971). He described all three terms as referring to the same type of conduct:

> [T]he actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to be aware of it, and so great as to make it *highly probable that harm would follow.* It usually is accompanied by a conscious indifference to the consequences, amounting almost to willingness that they shall follow . . . ."

¶ 72. Furthermore, relying on the Restatement (Second) of Torts § 908 cmt. b. (1977), we stated that punitive damages were allowed when the defendant's conduct demonstrated a "reckless indifference or disregard of the rights of others." *Wangen,* 97 Wis. 2d at 267. The Restatement (Second) of Torts § 908 cmt. b specifically refers to § 500 of the Restatement (Second) to define "reckless indifference to the rights of others." In turn, the Restatement (Second) of Torts § 500 (1965), provides that a person's conduct is in "reckless disregard of safety" if:

[H]e does an act or intentionally fails to do an act which it is his duty to the other to do, *knowing or having reason to know* of facts which would lead a reasonable man to realize, not only *that his conduct creates an unreasonable risk of physical harm* to another, *but also that such risk is substantially greater than that which is necessary to make his conduct negligent.*

Restatement (Second) of Torts § 500.[6]

---

*Id.* § 34, at 185 (emphasis added). In addition, he commented that " 'wilful,' 'wanton' or 'reckless' conduct" was synonymous with " 'gross' negligence." *Id.*

[6] The Restatement also noted that conduct in reckless disregard of safety is equivalent to " 'wanton or wilful misconduct.' " Restatement (Second) of Torts § 500, Special Note. Notably, this court in *Sharp v. Case Corp.,* 227 Wis. 2d 1, 21, 595 N.W.2d 380 (1999), utilized the "reckless disregard of safety" standard to allow for punitive damages in a products liability case. Specifically, the court stated that the manufacturer recklessly disregarded the safety of those "who might be harmed by the product." The majority's characterization of the common-law standard for punitive damages, majority op., ¶ 31, is difficult to reconcile with the explanation of the phrase "reckless disregard of safety" in Restatement (Second) of Torts § 500.

83

¶ 73. As such, our jurisprudence involving punitive damages focused on the nature of the defendant's conduct and the defendant's knowledge of the likelihood of harm that resulted from his conduct. We utilized the phrase "disregard of rights" rather than "disregard of safety" when referring to the type of conduct sufficient to give rise to punitive damages generally because punitive damages were not restricted to cases involving physical injury. However, in each case, our analysis focused on the defendant's awareness of the likelihood of some type of harm, rather than the likelihood of a violation of the plaintiff's rights in the abstract.

¶ 74. For instance, in *Wangen,* 97 Wis. 2d at 263, the plaintiffs were severely injured when the fuel tank of their automobile ruptured following a collision. We held that the plaintiffs pled sufficient facts to support a claim of punitive damages because the facts "portray[ed] conduct which is willful and wanton and in reckless disregard of the plaintiff's rights." *Id.* at 309.

¶ 75. Our analysis focused on the fact that the complaint alleged that the vehicle manufacturer, Ford: *"knew of the defects in the design of the gas tank . . . and of the fire hazard associated with the design"*; knew *"that these defects were causing serious burn injuries to occupants* of these and similar cars"; knew "how to correct these defects in ways that would have prevented the plaintiffs' burns"; "intentionally concealed this knowledge from the government and the public"; and that despite this knowledge, "deliberately chose not to recall" its defective vehicles. *Id.* at 309 (emphasis added). Thus, our discussion concentrated on the defendant's knowledge of the risk of fire and the likelihood of physical injury to occupants as a result of its failure to change the fuel tank design.

84

¶ 76. Likewise, in *Maxey,* 124 Wis. 2d at 429, a tenant in an apartment complex was burned as a result of an apartment fire. In assessing whether punitive damages were appropriate, we noted that "*we focus on the defendant's knowledge and state of mind at the time of the fire*" to determine whether his "conduct evidences a reckless indifference to or disregard of the plaintiff's rights." *Id.* at 434 (emphasis added). Before analyzing the defendant's conduct, we set forth the aforementioned passage from Professors Ghiardi and Kircher's treatise to explain the requisite "conduct justifying punitive damages." *Id.* at 433–34.

¶ 77. Applying this standard to the facts, we noted that the evidence demonstrated the following: there were numerous instances of fires started by vandals in the apartment complex in the months preceding the injury; the complex was not properly outfitted with locks and other safety mechanisms; there were numerous instances of other vandalism during the weeknights and weekends and that there was no security staff employed during these times; the fire alarm system in the complex was often inoperable; the fire danger was so high that tenants had formed their own security squad; and the defendant had knowledge of these facts and the risk of fire and yet did nothing. *Id.* at 434–37.

¶ 78. We allowed recovery of punitive damages from the landlord because:

> the conduct of the defendant evidenced more than a lack of ordinary care. Given [the landlord's] *knowledge with respect to the security problems and the history of fires* at Apollo Village and *his conscious refusal to reduce the risk of fires,* we do not hesitate to hold there is credible evidence from which the jury could reasonably conclude that [the landlord's] conduct evidences a

*reckless disregard of the rights and safety* of [the plaintiff]. Based upon the evidence concerning [the landlord's] failure to take action, it is reasonable to conclude that [*the landlord] proceeded with a reckless and conscious disregard of the grave consequences involved with such conduct.*

*Id.* at 437 (emphasis added). Thus, in *Maxey,* our analysis again focused on the defendant's knowledge of the likelihood of harm that actually occurred.

¶ 79. In *Loveridge,* 161 Wis. 2d at 162–63, the defendant passed the herpes simplex virus to the plaintiff, an underage co-worker, after performing various consensual acts of cunnilingus. The record indicated that the defendant had a history of cold sores and that such sores were present during the time he engaged in the illicit sexual contact with the plaintiff. *Id.* at 163. The record also indicated that the defendant did not know the herpes virus could be transmitted by cold sores, although he knew there was a "vague connection" between the two. *Id.*

¶ 80. On appeal, the defendant's insurer argued that the circuit court erred in submitting the question of punitive damages to the jury. *Id.* at 187. This court agreed and concluded that the case was not appropriate for the imposition of punitive damages. *Id.* at 192. In so holding, we discussed the circumstances under which punitive damages are available in Wisconsin. *Id.* at 188–92.

¶ 81. We noted that under *Maxey,* a defendant's conduct justifies punitive damages in two circumstances. *Id.* at 188. The first is where the defendant subjectively intends to injure or harm the plaintiff. *Id.* at 189. The second is where "the *defendant knew or should have known that his or her conduct created an unreasonable and strong probability of harm." Id.* at 191

86

(emphasis added). Thus, again focusing on the defendant's knowledge of the likelihood of harm, we stated that this standard could be met if there was evidence that "*Chartier knew that his sexual contact with Loveridge created 'a strong probability, although not a substantial certainty,' that Loveridge would be injured or harmed.*" *Id.* at 190 (quoting *Maxey,* 124 Wis. 2d at 433) (emphasis added).

¶ 82. In concluding that this second standard was not met, we reasoned: "there was unrebutted and undisputed testimony that Chartier did not know that the herpes virus could be spread from a cold sore on the mouth to the vagina during cunnilingus." *Id.* at 191. Further, we stated that there was not sufficient evidence that he "should have known" that herpes could be spread via a cold sore on his mouth during cunnilingus. *Id.* at 192.

¶ 83. Thus, the majority is simply wrong when it states that the common law did not consider the defendant's knowledge of the likelihood of harm as part of the "nature of the wrongdoer's conduct." Majority op., ¶ 33. As demonstrated above, while our jurisprudence spoke of a "disregard of rights" generally in referring to the type of conduct necessary for punitive damages, in each case, we analyzed the nature of the defendant's conduct and the defendant's awareness of the likelihood of harm inflicted, rather than the likelihood of a violation of the plaintiff's rights in the abstract. In sum, we allowed for punitive damages where it was evident that the defendant:

> kn[ew], or should have [had] reason to know, not only that the conduct create[d] an unreasonable risk of harm, but also that there [was at least] a strong probability . . . that the harm w[ould] result and [the

87

defendant], nevertheless, proceed[ed] with the conduct in reckless or conscious disregard of the consequences.

James D. Ghiardi & John J. Kircher, 1 *Punitive Damages L. & Prac.* § 5.01, at 8 (1996).

¶ 84. The majority is incorrect that the common law did not link the wrongdoer's conduct to the likelihood of harm and his knowledge thereof. *See* majority op., ¶¶ 31–33. In *Wangen,* we analyzed the defendant's knowledge of the likelihood of fuel tank rupture and burn injuries as a result of its failure to correct a design flaw in the fuel tank. In *Maxey,* we analyzed the defendant's knowledge of the likelihood of vandalism and fire as a result of his failure to provide adequate security and fire alarms. Similarly, in *Loveridge,* we inquired into the defendant's knowledge of the likelihood that he could spread a sexually transmitted disease.[7]

---

[7] The error of the majority's interpretation of our common law relating to punitive damages is apparent if one considers *Loveridge v. Chartier,* 161 Wis. 2d 150, 468 N.W.2d 146 (1991). If the common law did not require a link between the nature of the defendant's conduct and the probability of harm, then punitive damages should have been allowed in *Loveridge.* Yet, in concluding that the defendant's conduct did not rise to a level that justified punitive damages in that case, this court clearly stated that punitive damages would be warranted if "Chartier knew that his sexual contact with Loveridge created 'a strong probability, although not a substantial certainty,' that Loveridge would be injured or harmed." *Id.* at 190 (quoting *Brown v. Maxey,* 124 Wis. 2d 426, 433, 369 N.W.2d 677 (1985)). We concluded that punitive damages were inappropriate because the evidence demonstrated "Chartier did not know that the herpes virus could be spread from a cold sore on the mouth to the vagina during cunnilingus." *Id.* at 191.

¶ 85. As these cases demonstrate, punitive damages were allowed under the common law if the defendant acted with knowledge or appreciation that his conduct created an unreasonable risk of harm and that there was a strong probability that harm would result. While the phrase "rights of others" was used in a general sense to include the various types of injuries that could give rise to punitive damages, in each case, we focused on the particular harm caused by the defendant's conduct.[8] The phrase "willful, wanton, or reckless" referred to the defendant's knowledge of the

If the majority's interpretation of the common-law meaning of "willful, wanton, or reckless disregard of rights" was correct, then punitive damages clearly should have been allowed in *Loveridge* because the evidence showed that Chartier knew he had cold sores when he engaged in sexual acts with the plaintiff and knew there was some link between cold sores and the herpes virus. *Id.* at 163. Thus, were the majority correct that it was sufficient to merely disregard abstract rights, our analysis would have noted that Chartier's conduct demonstrated a reckless indifference to the plaintiff's "right" to be free from sexually transmitted diseases. However, we instead concluded that punitive damages were not appropriate because the evidence did not demonstrate that "Chartier knew that his sexual contact with Loveridge created 'a strong probability, although not a substantial certainty,' that Loveridge would be injured or harmed." *Id.* at 190 (quoting *Maxey,* 124 Wis. 2d at 433).

[8] For instance, in *Jacque v. Steenberg Homes, Inc.,* 209 Wis. 2d 605, 619–20, 563 N.W.2d 154 (1997), this court allowed an award of punitive damages where the defendant company committed an intentional trespass by moving a mobile home over the plaintiffs' property, despite the fact that the plaintiffs had explicitly refused permission to cross their land, because of "[t]he potential for harm resulting from intentional trespass" and because the defendant's intentional trespass "caused actual harm."

likelihood of harm—his knowledge that his conduct created at least a "strong probability" that harm would result.

¶ 86. Therefore, there was no need for the legislature to specify "injury" or "harm" when it enacted § 895.85(3), majority op., ¶ 20, because under the common law, it was understood that "disregard of the plaintiff's rights" referred to the harm caused by the defendant's conduct in each particular case. As such, when the legislature created § 895.85(3) to allow punitive damages if "the defendant acted . . . in an intentional disregard of the rights of the plaintiff," it heightened the state of mind required of the actor and left intact the link between the actor's state of mind and the likelihood of the harm.

¶ 87. Thus, with the enactment of § 895.85, it is no longer sufficient for the defendant to know or have reason to know "that the conduct creates an unreasonable risk of harm, [and] also that there is a strong probability, although not a substantial certainty, that the harm will result." James D. Ghiardi & John J. Kircher, 1 *Punitive Damages L. & Prac.* § 5.01, at 8 (1996). Rather, following the enactment of § 895.85, it *is* necessary that the defendant have knowledge that there is a "substantial certainty" that harm will result from his conduct. This conclusion flows naturally from the legislature's removal of punitive damages where the wrongdoer's mental state was "wanton, willful or reckless" and its restriction of punitive damages to where the actor's mental state was "intentional."

¶ 88. "The legal definition of 'intentional' is essentially the same whether found in tort law or in criminal law[:] . . . . A person may be said to have intentionally caused the result where the result is substantially certain to occur from the actor's conduct." *Shepard v.*

*Outagamie County Circuit Court,* 189 Wis. 2d 279, 287, 525 N.W.2d 764 (Ct. App. 1994). In *Shepard,* the court of appeals adopted the definition of "intentionally" from the criminal code and applied it to the civil contempt statute. *Id.* Wisconsin Stat. § 939.23 provides: " 'Intentionally' means that the actor has either a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result." *See also* Restatement (Second) of Torts § 8A (1965) ("The word 'intent' is used to denote that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it."). Consistent with the focus of the common law on the nature of the wrongdoer's conduct and his knowledge of the risk of actual harm, the "consequence" that must be substantially certain, so as to make a wrongdoer's act "intentional" for purposes of § 895.85(3), is actual harm to the plaintiff.

¶ 89. Thus, while I agree with the majority that the phrase "wanton, willful, or reckless disregard of rights" under the common law referred to "an indifference on the defendant's part to the consequence of his or her actions[,]" majority op., ¶ 31, the "consequence" referred to was a great risk or substantial probability of harm. Following the enactment of § 895.85(3), a mere "indifference" to a great risk of harm is not sufficient to justify punitive damages. Rather, § 895.85(3) now requires, at a minimum, that the wrongdoer have knowledge that harm to the plaintiff is substantially certain to result as a consequence of his or her actions.

¶ 90. Therefore, to answer the first question posed by the court of appeals, I would conclude that § 895.85(3) requires that the defendant act for the purpose of causing harm to the plaintiff or with knowl-

edge that harm is substantially certain to result from his conduct in order for punitive damages to be available.[9] This interpretation of § 895.85(3) does not "insert[] words into the statute[,]" majority op., ¶ 34; it merely recognizes the meaning and application of the phrase "wanton, willful or reckless disregard of the rights of the plaintiff" under the common law.

¶ 91. The majority, adopting the position set forth by the plaintiffs in *Wischer v. Mitsubishi Heavy Industries America, Inc.,* 2003 WI App 202, 267 Wis. 2d 638, 673 N.W.2d 303, concludes that the "result" that must be intended under § 895.85(3) is the "disregard of [the plaintiff's] rights," not the ultimate injury or harm. Majority op., ¶¶ 36, 38. This interpretation of § 895.85 suffers from several flaws.

¶ 92. First, the majority's interpretation is based on a misunderstanding of the common-law standard for punitive damages as discussed above. *See* majority op., ¶¶ 31–33. As emphasized previously, "[a] defendant's conduct [constituted a willful, wanton or reckless disregard of rights] only if the defendant knew or should have known that his or her conduct created an unreasonable and strong probability of *harm.*" *Loveridge,* 161

---

[9] Wisconsin Stat. § 895.85(3) also allows for the imposition of punitive damages if the "defendant acted maliciously toward the plaintiff." Maliciousness is a heightened state of intent that involves impure motives. "Malicious" is generally defined as " '[c]haracterized by, or involving, malice; having or done with, wicked, evil or mischievous intentions or motives[.]' " *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 484, 464 N.W.2d 654 (1991) (quoting, with approval, *Black's Law Dictionary* 958 (6th ed. 1990)). Further, " '[a]cts are malicious when they are the result of hatred, ill will, a desire for revenge, or inflicted under circumstances where insult or injury is intended.' " *Id.* at 483 (quoting, with approval, Wis JI-Civil 1707 (1990)).

Wis. 2d at 190–91 (emphasis added). At common law, we focused on the nature of the defendant's conduct and his knowledge of the risk of "*harm.*" We did not ask whether the defendant knew or should have known that his conduct created an unreasonable and strong probability of a "*disregard of the rights of the plaintiff*" in the abstract.

¶ 93. If "disregard of rights" is to have the same meaning under § 895.85(3) as it did under the common law, save the change of the modifier "reckless" to "intentional," then the majority's interpretation of § 895.85(3) simply cannot be squared with the common law.[10] Rather than incorporating the common-law meaning of "disregard of the rights of the plaintiff" into § 895.83(3) and taking into account the change in the modifier from "wanton, willful, or reckless" to "intentional," the majority grasps at straws, relying on a "pointed exchange between legislators" during the floor debate of the punitive damages legislation to support its position. Majority op., ¶ 23.

¶ 94. Next, despite the wide recognition that § 895.85 was intended to restrict the availability of punitive damages, the majority adopts an interpretation of § 895.85 that is virtually identical to its description of the common law "wanton, willful, or reckless" standard for recovery of punitive damages. The majority essentially concludes that the question of punitive damages may be submitted to the jury if the defendant's conduct demonstrates a deliberate indifference to the rights of the plaintiff. *See* majority op., ¶¶ 31, 34, 38.

---

[10] *See* majority op., ¶ 38 ("[A] person acts in an intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded.").

The United States Supreme Court has noted, albeit in a different context, that "[i]t is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk . . . is the equivalent of recklessly disregarding that risk." *Farmer v. Brennan,* 511 U.S. 825, 836 (1994). It appears as if the majority's interpretation of "intentional disregard of the rights of the plaintiff" in § 895.85(3) is no different than its characterization of the common-law standard. *Compare* majority op., ¶ 38 *with* majority op., ¶¶ 30–32.

¶ 95. In addition, the court of appeals in *Wischer* aptly noted that under the plaintiffs' interpretation of § 895.85(3), the interpretation that the majority adopts today, the standard for punitive damages is arguably *lower* under § 895.85(3) than it was under the common law. *Wischer,* 267 Wis. 2d 638, ¶ 42 ("[P]laintiffs' counsel admitted that his interpretation of the statute would expand rather than narrow the number of cases under which punitive damages could be awarded . . . . [P]laintiffs' counsel indicated that in his view of § 895.85(3), punitive damages under the *Loveridge* scenario *could be recovered.*") (emphasis in original). "[T]his interpretation of the statute . . . would expand the scope of punitive damages awards in clear contravention to the intent of the legislature when it enacted § 895.85(3)." *Id.*

¶ 96. Moreover, the court of appeals in *Wischer* noted the numerous cases in which punitive damages would be available if the position the majority takes today were adopted:

> [A]nyone who is negligent could be considered to be intentionally disregarding the rights of someone. Examples are numerous: someone who is drinking a cup of coffee while driving, or eating while driving, or adjusting the radio while driving, or even driving over

the speed limit. In each of these examples, an injured plaintiff could argue that the tortfeasor driver intentionally disregarded the rights of the other drivers on the road, and thus justify a punitive damage award.

*Id.,* ¶ 43. While the majority states that "[t]he legislature intended with the heightened standard that now there would be even fewer negligence cases giving rise to punitive damages[,]" majority op., ¶ 39, there is no principled reason why punitive damages would not be allowed in the above hypotheticals under the majority's interpretation of the statute.

¶ 97. In addition, the majority never satisfactorily defines the "rights" to which it is referring. The majority states, "the act or conduct must actually disregard the rights of the plaintiff, whether it be a right to safety, health or life, a property right, or some other right." Majority op., ¶ 38. What exactly are these "other" rights? Is the majority referring to constitutional rights, common-law rights, statutory rights, or rights yet to be recognized?

¶ 98. In an attempt to assuage these concerns, the majority ostensibly affixes additional prerequisites to the imposition of punitive damages. The majority states that in addition to constituting an intentional disregard of the plaintiff's rights under § 895.85(3), "the act or conduct must be sufficiently aggravated to warrant punishment by punitive damages." Majority op., ¶ 38. However, this "added requirement" is entirely illusory, as it is § 895.85 that describes the level of aggravation sufficient to warrant punitive damages in the first place. The majority also cautions that "circuit courts [are] to serve as gatekeepers" in analyzing the conduct at issue and determining whether there was in fact an intentional disregard of rights, "before sending a question on punitive damages to the jury." Majority op.,

¶ 40. This "gatekeeping function" was suggested by plaintiffs' counsel during oral argument before this court in the *Wischer* case. *Wischer v. Mitsubishi Heavy Indus. Am., Inc.*, 2005 WI 26, 279 Wis. 2d 4, 694 N.W.2d 320. This "added requirement" is illusory as well. When asked what standards the circuit court should follow in administering its "gatekeeping function" and determining when punitive damages would be appropriate, counsel for the *Wischer* plaintiffs responded: "You'll know it when you see it."

¶ 99. This low threshold, focusing on "rights" in the abstract rather than the defendant's knowledge of the harm, has constitutional implications. The United States Supreme Court has stated: "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice . . . of the conduct that will subject him to punishment[.]" *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996). Given the frequency with which individuals assert—and courts are apt to recognize—new "rights," one has to wonder how anyone can be put on fair notice as to what conduct subjects him to a punitive damage award under the majority's interpretation of the statute. Certainly, a "you'll know it when you see it" standard does not satisfy this basic constitutional requirement.

II

¶ 100. As to the second question certified by the court of appeals, I would conclude that, in accordance with § 895.85(1)(c), the defendant's conduct must be directed at the person seeking to recover punitive damages. This court recently reaffirmed the importance of adhering to the text of a statute:

> Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpreta-

tion focus primarily on the language of the statute. We assume that the legislature's intent is expressed in the statutory language. . . . It is the enacted law, not the unenacted intent, that is binding on the public.

*State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. To that extent, this court has stated: "Words that are defined in the statute are given the definition that the legislature has provided." *Wisconsin Citizens Concerned for Cranes and Doves,* 270 Wis. 2d 318, ¶ 6 (citing *Beard v. Lee Enters.,* 225 Wis. 2d 1, 23, 591 N.W.2d 156 (1999)).[11]

¶ 101. Wisconsin Stat. § 895.85(3) provides: "The plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." Wisconsin Stat. § 895.85(1)(c) defines "[p]laintiff" as: "the party seeking to recover punitive damages." Thus, when the statutory definition of "plaintiff" is read into § 895.85(3), the statute provides that punitive damages are available if "evidence is submitted showing that the defendant acted maliciously toward [the party seeking to recover punitive damages] or in an intentional disregard of the rights of [the party seeking to recover punitive damages]."

¶ 102. The statute could not be clearer. It plainly requires that the conduct giving rise to an award of punitive damages be directed at "the party seeking to recover punitive damages." The majority ignores the

---

[11] *See also Bosco v. LIRC,* 2004 WI 77, ¶ 23, 272 Wis. 2d 586, 681 N.W.2d 157 (accord); *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110 (accord).

plain language of the statute and instead violates its own admonition against reading words into the statute by essentially concluding that it is sufficient if the defendant intentionally disregards the rights of a class of people to which the plaintiff belongs. *See* majority op., ¶ 56 ("While Hogner may not have targeted Strenke personally, his intentional disregard of the rights of *all* motorists on the road necessarily implicated Strenke's rights.") (emphasis in original).

¶ 103. The majority states that this result is more "reasonable" because there is nothing in the drafting records to support the contention that the defendant's actions must be directed at the particular plaintiff bringing the action. Majority op., ¶¶ 48–50.[12] However, there is no need to turn to the legislative history on this point; the legislature has unmistakably and explicitly determined what "the plaintiff" means in § 895.85. *See Kalal,* 271 Wis. 2d 633, ¶ 51 ("legislative history need not be and is not consulted except to resolve an ambiguity in the statutory language").

¶ 104. While the majority states that "[l]aws must be interpreted, considering the legal and practical consequences," majority op., ¶ 48, this is nothing more than an artfully crafted euphemism invoked by the court to justify its willingness to disregard and under-

---

[12] Notably, the majority states that its construction is "supported by . . . legislative history." Majority op., ¶ 48. However, the majority cites no legislative history to support its position; instead, it cites to the lack of legislative history in order to discount what the statute plainly says. Thus, the majority has gone one step beyond the increasingly common practice of utilizing legislative history to undermine the plain meaning of what the legislature has enacted as law; the majority actually uses the *absence* of legislative history to ignore the plain meaning of a duly enacted statute.

mine the plain meaning of a law that the people of this state have enacted when it disagrees with the policy implications of the statute. If the plain meaning of an unambiguous statute leads to undesired results, the proper remedy is for the legislature to amend the statute, not for this court to refuse its solemn obligation to apply what the legislature has plainly enacted. *See generally Columbus Park Hous. Corp. v. City of Kenosha,* 2003 WI 143, 267 Wis. 2d 59, 671 N.W.2d 633. Rulings from this court must be based on more than subjective notions of practical politics for them to have any semblance of legitimacy as "law."

¶ 105. Therefore, in accordance with the plain meaning of "plaintiff" that the legislature provided in § 895.85(1)(c), I would conclude the conduct referred to in § 895.85(3) must be directed at "the party seeking to recover punitive damages" in order for punitive damages to be recoverable under the statute.

### III

¶ 106. Despite my strong disagreement with the majority as to issues one and two, I nevertheless join the mandate of the majority opinion because I conclude that there is sufficient evidence regarding the defendant's conduct to submit a punitive damage question to the jury under a proper interpretation of the heightened standard for punitive damages in § 895.85(3).

¶ 107. The evidence presented to the jury during the punitive damages phase of the trial indicated that Mr. Hogner had consumed 16 to 18 beers over a five-hour period before the accident. Mr. Hogner testified that he had consumed a 12 pack of beer at home before going to a bar. He testified that while at the bar he consumed four to six more alcoholic drinks. When

the accident occurred, Mr. Hogner was en route to another tavern with a companion in his vehicle. The jury was informed that Mr. Hogner had four previous convictions for drunk driving and that this was his fifth offense. The jury was informed that blood tests taken after the accident indicated that Mr. Hogner's blood alcohol content was .269.

¶ 108. Mr. Hogner testified that when the accident occurred he was attempting to make a left-hand turn at an intersection. He testified that he saw other vehicles approaching and that he believed Mr. Strenke's vehicle was signaling a right-hand turn. Mr. Hogner testified that he thought he could make a left-hand turn before Mr. Strenke's vehicle made its turn. Mr. Hogner thus made a left-hand turn in front of Mr. Strenke's vehicle and, as a result, Mr. Strenke's vehicle struck Mr. Hogner's vehicle. Mr. Hogner testified that he did not intend to injure Mr. Strenke.

¶ 109. Given the evidence of the circumstances surrounding the accident, Mr. Hogner's state of intoxication, and Mr. Hogner's history of drunken driving offenses, I would conclude that a reasonable jury could find that Mr. Hogner knew that it was substantially certain that the driver of the oncoming vehicle would be injured as a result of his decision to make a left-hand turn in front of him. While Mr. Hogner testified that he did not intend to harm Mr. Strenke and believed he had sufficient time to complete a left-hand turn, "[i]ntent may be inferred from conduct." *Shepard,* 189 Wis. 2d at 287. A reasonable jury could infer, given his past convictions for drunken driving, that Mr. Hogner was aware of his level of intoxication after consuming 16 to 18 beers in a five-hour period and his resulting diminished capabilities of perception and judgment. A reasonable jury could conclude that Mr. Hogner made an

intentional decision to turn in front of an oncoming car. A reasonable jury could further conclude that Mr. Hogner was aware that turning in front of an oncoming vehicle after consuming 16 to 18 alcoholic drinks was substantially certain to result in injury to the driver of the oncoming vehicle. Thus, I would conclude that there was sufficient evidence for the jury to find an "intentional disregard of the rights of the plaintiff," Wis. Stat. § 895.85(3), as that phrase is properly understood.

¶ 110. While the evidence does not indicate that Mr. Hogner was an acquaintance of Mr. Strenke at the time of the accident, the evidence nonetheless satisfies the requirement that the wrongdoer's conduct be directed at "the party seeking to recover punitive damages." Wis. Stat. § 895.85(1)(c). Mr. Hogner was aware of Mr. Strenke's vehicle when he made his left-hand turn. He testified that he believed Mr. Strenke's vehicle was signaling a right-hand turn. A reasonable jury could conclude that by electing to turn in front of an oncoming vehicle while heavily intoxicated, Mr. Hogner's conduct was directed at the driver of the oncoming vehicle, Mr. Strenke. In other words, a jury could conclude that Mr. Hogner was aware that injury to the driver of the oncoming vehicle was substantially certain to result from his actions.

¶ 111. Therefore, I concur in the mandate of the majority opinion but do not join in its reasoning.