Annacille G. WILBER, Plaintiff-Appellant,†

v.

Carol M. FUCHS, d/b/a Carol Fuchs Enterprises, 3D8, Inc., and American Family Mutual Insurance Company, Defendants-Respondents,

Paul F. BRUNNETTE, KKK Auto Engineering, Inc., West Bend Mutual Insurance Company, Pomp's Tire Service, Inc., and the North River Insurance Company, Defendants.

Court of Appeals

*No. 89-2395. Submitted on briefs August 21, 1990.—Decided September 12, 1990.*

(Also reported in 461 N.W.2d 803.)

†Petition to review denied.

158

159

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William A. Denny* of *Denny & Yanisch* of Elm Grove.

On behalf of the defendant-respondent, American Family Mutual Insurance Company, the cause was submitted on the brief of *Peter D. Alberg,* of *Mingo & Yankala, S.C.* of Milwaukee.

Before Nettesheim, P.J., Scott and Anderson, JJ.

NETTESHEIM, P.J.   The issue on this appeal is whether a plaintiff's offer of settlement of all claims directed individually to multiple defendants is a valid offer of settlement pursuant to sec. 807.01(3), Stats. The trial court ruled that such an offer of settlement is not valid. We agree and affirm the judgment which denied Annacille Wilber double costs pursuant to sec. 807.01(3) and interest from the date of her offer of settlement pursuant to sec. 807.01(4).

Wilber was injured when an automobile she was operating was struck by a truck operated by Paul Brunnette. Wilber sued Brunnette and also named Carol Fuchs and 3D8, Inc., as additional defendants, claiming that the latter were negligent in maintaining the truck. Wilber sought compensatory damages against the defendants "jointly and severally" and punitive damages in separately stated amounts against the defendants "severally."

By amended complaint, Wilber realleged her original complaint and also named KKK Auto Engineering and Pomp's Tire Service as additional defendants.[1] The amended complaint again sought compensatory damages against all defendants "jointly and severally." Punitive damage claims against Fuchs and 3D8 were again stated, but the amended complaint did not echo the punitive damage claim recited against Brunnette in the original complaint. No punitive damage claims were asserted against KKK Auto Engineering and Pomp's Tire Service, Inc.

On August 3, 1987, Wilber served an offer of settlement on all of the defendants offering to settle *"all* claims she has in this action for the total sum of $494,720.25, plus taxable costs." (Emphasis added.) On July 26, 1988, Wilber served a subsequent offer of settlement on all of the defendants offering to settle *"all* claims she has in this action for the total sum of $400,000.00, plus taxable costs." (Emphasis added.) This latter offer of settlement was directed to "all parties."

Both offers of settlement contained the following language:

> PLEASE BE FURTHER ADVISED that this offer is being extended to each of the defendants individually and that acceptance of this offer will serve as a complete settlement of all claims involving the September 17, 1986 occurrence plaintiff may have against the remaining non-accepting defendants with

---

[1]The claim against KKK Auto Engineering alleged a negligent failure to properly install and inspect the brake shoes on the truck driven by Brunnette. The claim against Pomp's Tire Service alleged a negligent installation of tires of dissimilar character which caused the truck to veer to the left when the brakes were applied.

full reservation of any accepting defendant's rights as against the non-accepting defendants.

Thereafter, Wilber and Brunnette entered into a *Pierringer*[2] settlement and release for $250,000. None of the remaining defendants responded to Wilber's offer of settlement.

The case went to jury trial against Fuchs, 3D8 Inc., Brunnette, and KKK Auto Engineering.[3] In its special verdict, the jury assessed the causal negligence as follows: Fuchs 10%; 3D8 44%; Brunnette 46%; and KKK Auto Engineering 0%.

Postverdict, Wilber sought to recover double costs and interest from the date of her initial offer of settlement pursuant to sec. 807.01(3) and (4), Stats. The trial court denied Wilber's request, ruling that the offer of settlement was not valid under sec. 807.01(3) because the offer was not individualized as to each defendant.[4] Wilber appeals.

■

The issue presents one of statutory construction of sec. 807.01(3) and (4), Stats., which governs offers of settlement by a plaintiff to a defendant. Statutory construction presents a question of law. *Eby v. Kozarek,* 153 Wis. 2d 75, 79, 450 N.W.2d 249, 251 (1990). We decide such questions independently of the trial court's interpretation. *Id.*

Although this case is factually distinct from the supreme court's decision in *DeMars v. LaPour,* 123 Wis. 2d 366, 366 N.W.2d 891 (1988), and the court of appeals'

---

[2]*Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

[3]Wilber's action against Pomp's Tire Service was dismissed just prior to trial.

[4]The trial court also ordered a remittitur of the damages in the amount of $117,600. Wilber accepted the remittitur instead of opting for a new trial on the issue of damages.

decision in *White v. General Casualty Co.,* 118 Wis. 2d 433, 348 N.W.2d 614 (Ct. App. 1984), we conclude that the rationale and policy underpinning those cases apply.

In *White,* we considered whether a joint offer of settlement on behalf of multiple plaintiffs to a single defendant was competent under sec. 807.01(3) and (4), Stats. We held that a joint offer was not valid, observing:

> Extending the parameters of sec. 807.01(3) and (4), Stats., to include joint settlement offers might, therefore, *unreasonably* force defendants to settle a case because of the leverage exerted by the possibility of an aggregate judgment in excess of the joint settlement offer even though, as to individual plaintiffs in the lawsuit, a settlement offer would have been legitimately rejected.

*White,* 118 Wis. 2d at 439, 348 N.W.2d at 617 (emphasis added). Such a construction, we concluded, would force settlement of lawsuits appropriately left for resolution by trial rather than encourage settlement of those disputes which lend themselves to settlement—a result at odds with the purpose of the offer of settlement statute. *Id.*

*White* was approved by the supreme court in *DeMars.* "When multiple plaintiffs each make individual offers of settlement, the defendant is able to evaluate each individual offer separately and decide whether or not to accept it." *DeMars,* 123 Wis. 2d at 373, 366 N.W.2d at 894-95.

Although the instant case does not concern a joint offer of settlement by multiple plaintiffs, we nonetheless conclude that the logic of *White* and *DeMars* is inescapable and must govern. All five individual defendants in this case, each alleged to be negligent in different ways, were confronted with Wilber's offer of settlement

163

which recited only one aggregate settlement figure for *all* her claims relating to the incident. As such, Wilber's offer of settlement did not permit each defendant to individually evaluate the offer *from the perspective of that defendant's assessment of his or her own exposure.* This was the very concern expressed in *White* and *DeMars.*

*White* and *DeMars* do not condemn offers of settlement that can "force" settlements. Rather, they condemn offers of settlement that *unreasonably* force settlements. *White,* 118 Wis. 2d at 439, 348 N.W.2d at 617. Thus, a plaintiff's offer of settlement may properly be said to "force" a settlement when the defendant's motivation to settle results from an opportunity to fairly assess the offer in light of the *particular* claim made against that defendant. This opportunity is not afforded by a single aggregate offer to an individual defendant which offers to settle all claims against multiple defendants who are alleged to be negligent in varying ways and degrees. This is especially true where, as here, punitive damages are "severally" alleged against some, but not all, of the defendants. A defendant who spurns an offer of settlement should pay the sanctions of the statute when he or she errs in evaluating the claim against himself or herself—not others.[5]

Wilber argues that our interpretation should not apply where the multiple defendants are alleged to be

---

[5]Since we conclude that Wilber's offer of settlement was invalid pursuant to sec. 807.01(3) and (4), Stats., we need not address the respondents' other claims that Wilber did not recover a judgment sufficient to invoke the statute and that Wilber's August 3, 1987 offer of settlement was revoked by her later offer of July 26, 1988.

jointly and severally liable. The test, however, is not the nature of the liability. Instead, it is the ability of the offeree to fairly evaluate the offer. For instance, joint and several liability does not render invalid a joint offer of settlement *by* multiple defendants because "[t]he plaintiff's claim has no more or less value whether the offer is submitted by the defendants separately or jointly." *Denil v. Integrity Mut. Ins. Co.,* 135 Wis. 2d 373, 382, 401 N.W.2d 13, 16 (Ct. App. 1986). In this case, the roles are reversed from those in *Denil*—the plaintiff makes the offer to the defendants. But the test remains the same—does the offeree have a fair opportunity to fully evaluate his or her potential individual liability to the plaintiff. Thus, although the result of *Denil* is different from those in *White, DeMars* and this case, the approach, analysis and test are the same.

Finally, we reject the respondents' argument that Wilber's appeal is frivolous within the meaning of sec. 809.25(3), Stats. We have noted that this case is factually distinct from *White* and *DeMars.* As such, we have extended the rule of those cases to this and future similar cases. It is the respondents—not Wilber—who urge this extension. Wilber's position is based upon *existing* law. Such a stance can hardly be said to be "without any reasonable basis in law" under sec. 809.25(3). Wilber's appeal is not frivolous.

*By the Court.*—Judgments affirmed.