Ashley E. Mews, Diane E. Mews, as Guardian in fact for Jesse D. Mews and Diane E. Mews, Plaintiffs-Respondents,†

v.

Derek J. Beaster and American Family Mutual Insurance Company, Defendants-Appellants,

Open Hearth Homes and State Farm Insurance Company, Defendants.

Court of Appeals

*No. 04–1147. Submitted on briefs January 7, 2005.—Decided February 16, 2005.*

2005 WI App 53

(Also reported in 694 N.W.2d 476.)

† Petition to review denied 7-28-2005.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Wayne M. Yankala* and *Hillary M. Kowalski* of *Mingo & Yankala, S.C.*, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Thomas C. Simon* of *Gatzke & Ruppelt, S.C.*, of New Berlin.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. BROWN, J.    The issue in this case arises from pretrial settlement offers made by the defendants to each of three plaintiffs. WISCONSIN STAT. § 807.01(1) (2003–04)[1] allows a defendant to serve a written offer of judgment on a plaintiff, which offer the plaintiff must accept within ten days. If the plaintiff does not accept the offer and fails to recover a more favorable judgment, the defendant shall recover costs. *Id.* However, the offer is not valid unless the offeree is able to fully and fairly evaluate the offer from his or her own perspective. *Wilber v. Fuchs,* 158 Wis. 2d 158, 164–65, 461 N.W.2d 803 (Ct. App. 1990). The question here is whether the pendency of a motion to dismiss part of a plaintiff's claim absolves the plaintiff from having to act on the statutory offer. The plaintiffs in this case argue that the offers to them could not have been "fully and fairly evaluated" because of such a pending motion. We disagree. If an offer is plain on its face and offers to settle the entire claim, it is an offer to do so despite the vagaries of suit. Whether the value of the claim may later change due to a court's pretrial ruling is part of the risk-benefit analysis that all parties are capable of deciding. The offers are enforceable, and we reverse the trial court's ruling to the contrary.

¶ 2.    The genesis of this lawsuit is an auto accident involving vehicles driven by Ashley E. Mews and Derek J. Beaster. Beaster rear ended Mews' automobile, causing injuries to Ashley and her brother, Jesse D. Mews. They filed suit along with their mother, who asserted a claim for loss of society and companionship, and demanded payment for medical expenses. The complaint

_____

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

alleged that Beaster was negligent and also that, because he had consumed alcoholic beverages prior to the accident, there should be punitive damages. American Family Mutual Insurance Company was also named as a defendant since it was Beaster's insurer at the time of the accident. We will refer to the defendants collectively as "Beaster."

¶ 3.   Beaster moved to dismiss the punitive damages claim or, in the alternative, for bifurcation of the compensatory and punitive damages claims. The trial court heard and denied the motion on August 4, 2003, subsequently entering an order consistent with that ruling. On October 3, Beaster moved for reconsideration of the denial of the motion to strike the punitive damages claim based, in part, on an unrelated opinion that this court decided subsequent to the denial of the original motion. The hearing was set for October 20.

¶ 4.   On October 6, Beaster served statutory offers of judgment separately on each of the three plaintiffs. These offers were not accepted within the statutory time period, which was the close of the business day on October 20. On that same day, the trial court again denied the motion to strike the punitive damages claim but did allow bifurcation of the compensatory and punitive damages claims.

¶ 5.   The case proceeded to jury trial, and the jury found compensatory damages but not punitive damages. The offers of judgment directed to the three plaintiffs exceeded the amount awarded by the jury. After trial, Beaster unsuccessfully moved for costs pursuant to Wis. Stat. § 807.01(1). The trial court agreed with the plaintiffs that they could not have fully and fairly evaluated the offers until they knew whether the punitive damages claim was going to trial. The trial court opined that the plaintiffs' counsel "did not have all

of the information available to him in a time period that would have otherwise given him the ability to properly evaluate . . . ." This appeal followed.

██

¶ 6. Whenever our appellate courts have addressed whether an offer to settle could be "fully and fairly evaluated," the discussion of that issue has been limited to the context of infirmities within the four corners of the offer itself. We have scrutinized whether offers of judgment are sufficiently specific to give offerees the ability to evaluate them and make reasoned decisions about whether to accept them. Examples abound. *Wilber* concerned whether a plaintiff's offer of settlement of all claims directed individually to multiple defendants was a valid offer. *See Wilber*, 158 Wis. 2d at 160. We deemed the offer invalid because the defendants could not ascertain their individual exposure from one aggregate settlement figure. *See id.* at 164. In *Testa v. Farmers Insurance Exchange*, 164 Wis. 2d 296, 299, 474 N.W.2d 776 (Ct. App. 1991), we held valid a single settlement offer to multiple defendants. There the defendants were able to ascertain their individual liability from the offer. *Id. Stan's Lumber, Inc. v. Fleming*, 196 Wis. 2d 554, 561, 576, 538 N.W.2d 849 (Ct. App. 1995), involved ambiguity in the offer as to whether it included sums previously awarded by reason of a partial judgment. *Pachowitz v. LeDoux*, 2003 WI App 120, ¶¶ 51–52, 265 Wis. 2d 631, 666 N.W.2d 88, *review denied,* 2003 WI 140, 266 Wis. 2d 63, 671 N.W.2d 849 (No. 02–2100), rejected the enforceability of an offer of judgment because it did not include attorney fees, which the court saw as being part of the judgment in a case involving a fee-shifting statute.

¶ 7. In *DeWitt Ross & Stevens, S.C. v. Galaxy Gaming and Racing Ltd. Partnership*, 2004 WI 92, 273

Wis. 2d 577, 682 N.W.2d 839, while the supreme court did not have before it an offer which was arguably lacking in specificity, it did involve an offer which appeared to state a condition that was outside the purview of Wis. Stat. § 807.01(1). The case involved an offer that came with a condition that there had to be payment within fifteen days of acceptance of the offer. *See DeWitt*, 273 Wis. 2d 577, ¶ 13. Yet, *DeWitt*, like all the others cited, concerned a question of infirmity or ambiguity within the four corners of the offer. All of the above cases are therefore factually distinguishable from the case here, where the claim is that an event extraneous to the text of the document prevented the plaintiffs from being able to properly evaluate the offer.

¶ 8.  Nonetheless, the plaintiffs cite *Stan's Lumber* as being helpful to their cause. This is how they see *Stan's Lumber*:

> In *Stan's Lumber* an offer of settlement was presented to Fleming, who did not respond according to [Wis. Stat.] § 807.01(3). Fleming claimed, after trial, that he could not fairly evaluate the offer at the time because it was ambiguous due to a partial judgment that had been taken in the matter prior to the offer of settlement being served on him. In analyzing the offer of settlement, the court in *Stan's Lumber* held that "[w]hile these words are clear enough on their face, they become ambiguous *in light of the partial judgment already entered* against Fleming on the admitted claim." It is clear that the court in *Stan's Lumber* looked beyond the mere face of the offer and considered other circumstances in relation to Fleming's ability to fully and fairly evaluate the offer. (Alteration in original; citations omitted.)

¶ 9. The plaintiffs are wrong in their interpretation of *Stan's Lumber*. To explain, we begin by quoting a passage from Judge Richard Posner in *United States v. National Steel Corp.*, 75 F.3d 1146, 1149 (7th Cir. 1996):

> There is a helpful analogy to the distinction in contract law between "intrinsic" and "extrinsic" ambiguity. The first is present when from just reading the contract it is apparent that the contract is unclear. The second is present when although the contract is clear at the semantic or literal level, anyone who knew something about the subject matter would realize that the contract probably did not mean what it said. If neither type of ambiguity is present, the court does not take evidence beyond the contract itself. (Citation omitted.)

¶ 10. We use a similar analogy to explain *Stan's Lumber*. While we did not use the term "intrinsic" in our opinion, we wrote that, facially, the offer was clear. *See Stan's Lumber*, 196 Wis. 2d at 576. In other words, there was no "intrinsic" ambiguity. But even though Stan's offer was clear from a semantic or literal standpoint, the person to whom the offer was directed, Gary Fleming, was a party who "knew something about the subject matter" and would be unsure about whether the offer included or excluded the amount awarded by the earlier partial judgment. An ambiguity was thus presented extrinsically, which compelled us to consider the earlier partial judgment.

¶ 11. Here, by contrast, from the plain language of the offer, the plaintiffs knew that Beaster was offering to settle the "entire" claim for a certain amount. Whether punitive damages were eventually going to be part of the case or not, the offer was clear:  Beaster would pay "X" dollars to resolve the whole claim. This situation is far different from Fleming's dilemma where

he did not know the value of "X" from the language of the offer. There was no instrinsic or extrinsic ambiguity underlying this offer. There was, therefore, no compelling reason for the parties or the court to consider the impact of the pending motion to reconsider in determining the clarity or legality of the offer.

¶ 12.    The law in Wisconsin is such that we will condemn only those offers of settlement that *unreasonably* force settlements. *Wilber*, 158 Wis. 2d at 164. Here, given the fact that both parties had the same information, were equally unsure about what might occur with regard to the motion for reconsideration and were equally capable of factoring this uncertainty into their risk-benefit analyses, there was nothing unreasonable about the offer or the timing of it. *Cf. Mackie v. Chizmar*, 965 P.2d 1202, 1204 n.2, 1206 (Alaska 1998) (costs awarded based on a rule similar to WIS. STAT. § 807.01(1) where parties were equally uncertain about outcome of appeal and equally capable of factoring certain contingencies into their risk-benefit analyses).

¶ 13.    Were we to rule in the plaintiffs' favor, we would be doing a disservice to the offer-to-settle statutes that were designed to "force" settlements so long as the force is reasonable. Because any pending motions would likely bear on the decision whether to accept or reject an offer, the entire process would be rendered meaningless in innumerable cases. Motions to strike testimony, motions in limine, motions to dismiss and motions for summary judgment, to name a few, all could be used to thwart a clear, valid offer to settle a case. We can envision a scenario where any attorney on the receiving end of an offer of judgment who wanted to avoid the consequences of the offer could file a motion within the ten days that would place the outcome of the

action in some state of uncertainty, thereby placing the attorney and the client in a position where they could not fully and fairly evaluate the offer. We cannot countenance such a result.

¶ 14.   The circuit court's order declined to enforce the offer of settlement. We reverse that order and remand with directions that it determine the amount owed to Beaster in accordance with WIS. STAT. § 807.01(1).

*By the Court.*—Order reversed and cause remanded with directions.