Joseph L. Henrikson,
Plaintiff-Appellant,

v.

Nicholas C. Strapon,
American Family Mutual Insurance Company
and Wisconsin Physicians Service Corp.,
Defendants-Respondents.

Court of Appeals

No. 2007AP2621. *Submitted on briefs July 2, 2008.*
*—Decided August 21, 2008.*

2008 WI App 145

(Also reported in 758 N.W.2d 205.)

226

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Gregory J. Egan* and *Christopher W. Dyer* of *O'Flaherty Heim Egan, Ltd.*, La Crosse.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Michael W. Gill* and *Craig R. Steger* of *Hale, Skemp, Hanson, Skemp & Sleik*, La Crosse.

Before Higginbotham, P.J., Vergeront and Lundsten, JJ.

¶ 1. VERGERONT, J. This is an appeal of a nonfinal order dismissing on summary judgment Joseph Henrikson's claim for punitive damages in this action alleging negligent driving by Nicolas Strapon. Henrikson contends the circuit court applied an incorrect legal

standard regarding punitive damages and, when the correct standard is applied, there is evidence that entitles him to a jury trial on punitive damages. In particular, Henrikson asserts the following evidence shows that Strapon acted in intentional disregard of his rights: Strapon's consumption of alcohol; the circumstances of the accident, including the evidence that Strapon hit Henrikson while he was crossing the street in the crosswalk; and the undisputed evidence that Strapon fled the scene after hitting Henrikson.

¶ 2. We conclude the circuit court applied the correct legal standard for punitive damages. We also conclude that, viewing the evidence most favorably to Henrikson, there is no evidence or reasonable inference therefrom that Strapon acted in intentional disregard of Henrikson's rights. We therefore affirm.

## BACKGROUND

¶ 3. The incident giving rise to this action occurred when the car Strapon was driving struck Henrikson while he was crossing the street. Henrikson sued Strapon and American Family Mutual Insurance Company, alleging that Strapon was negligent and requesting compensatory and punitive damages.[1] Strapon moved for partial summary judgment, contending that, based on the undisputed facts, there was no basis for punitive damages.

¶ 4. The materials Strapon submitted in support of his motion show that he stopped his vehicle behind a bus, which had stopped to let passengers off, and when he started up again he struck Henrikson, who had just gotten off the bus and was crossing the street. Strapon

---

[1] Henrikson also joined as a defendant his health insurer, Wisconsin Physicians Service Corporation.

did not stop after striking Henrikson and left the scene. Strapon was located about an hour later based on Henrikson's description of the vehicle. Strapon told the officer he had been drinking at a tavern. The investigating officer gave Strapon field sobriety tests and a preliminary breath test, after which he arrested Strapon for causing injury by operating a motor vehicle while intoxicated and hit-and-run causing injury. Strapon eventually entered pleas of guilty to reduced charges of reckless driving contrary to WIS. STAT. § 346.62(2) (2003–04)[2] and hit-and-run causing vehicle damage contrary to WIS. STAT. § 346.67(1). In the stipulation accompanying the plea agreement, the State stated it did not believe it could prove that at the time Strapon was driving he was under the influence of an intoxicant or driving with a prohibited alcohol content.

¶ 5. According to Strapon's deposition, he did not stop after striking Henrikson because he believed Henrikson "jumped on the hood and was screwing around."

¶ 6. According to Henrikson's deposition, Strapon's vehicle hit him when he was five to ten feet into the crosswalk. The vehicle hit his knee and that contact brought him up onto the hood of the car. He was then projected off the hood and into the street, where he landed on his tailbone, then fell back and hit his head. The vehicle did not stop after hitting him, but may have slowed down; he does not know because he was "flipping into the air" at the time.

¶ 7. Henrikson opposed the motion for summary judgment, arguing that, viewing the evidence most favorably to him, there was evidence that Strapon intentionally disregarded his rights, including evidence

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

that Strapon's fleeing the scene caused additional injuries to Henrikson. In support of his motion, Henrikson submitted the affidavit of an expert who opined that, based on the results of a test of Strapon's blood performed shortly after his arrest, Strapon's blood alcohol concentration at the time of the accident would have been .107 or .111.[3]

¶ 8. Henrikson also submitted the affidavit of his friend, Ian Hensley, who got off the bus with Henrikson and saw Strapon's vehicle strike Henrikson. Hensley averred as follows:

> The vehicle . . . was traveling approximately 25 to 30 mph. . . . [I]t was obvious that the vehicle was traveling at full speed and completely failed to stop for the flashing red light, striking Mr. Henrikson . . . .
>
> The vehicle did not brake or even slow down in any regard upon striking Joseph Henrikson. As a result, the forward motion of the vehicle forced Mr. Henrikson up the hood of the vehicle, against the windshield of the vehicle, and flung him into the middle of the intersection. Mr. Henrikson landed hard on the road surface, hitting his head and receiving multiple scrapes. From what I observed, I do not believe Mr. Henrikson would have received these injuries if the vehicle had braked upon striking him . . . .
>
> The vehicle . . . never slowed down at all after

---

[3] WISCONSIN STAT. § 340.01(46m)(a) (2003–04), like the current statute, provided that the prohibited alcohol concentration for a person with two or fewer prior convictions, suspensions, or revocations was 0.08 or more. This statute applied to acts committed on or after September 30, 2003, *see* 2003 Wis. Act 30, §§ 9, 34 and 35, and would have applied to the incident in this case, which occurred on October 11, 2003. Prior to September 30, 2003, the prohibited alcohol concentration for a person with no prior convictions was 0.1. *See* § 340.01(46m)(a) (2001–02).

striking Mr. Henrikson. Based upon what I observed, it would have been impossible for the driver not to have noticed that he struck a person. The driver was obviously trying to get away.

¶ 9. The circuit court granted Strapon's motion, dismissing the punitive damages claim. The court stated that, drawing all inferences in favor of Henrikson, this was a "run of the mill accident with the use of alcohol" and there was not an intent to disregard Henrikson's rights beforehand, as required by *Strenke v. Hogner*, 2005 WI 25, 279 Wis. 2d 52, 694 N.W.2d 296. The court reasoned that, although Strapon had been using alcohol, it was not an aggravated situation: he did not have any prior OWIs, he was not driving on the highway, and, accepting Henrikson's expert's report, Strapon's blood alcohol concentration was "relatively low." The court relied on *Kehl v. Economy Fire & Casualty Co.*, 147 Wis. 2d 531, 433 N.W.2d 279 (Ct. App. 1988), for the proposition that the accident was a distinct act from the fleeing and the fleeing could not be considered for purposes of punitive damages unless it caused an injury. The court concluded it was undisputed that no further injury occurred because of Strapon's fleeing the scene.

¶ 10. We granted Henrikson's petition for interlocutory review of the court's nonfinal order and stayed further proceedings in the trial court pending disposition of this appeal.

## DISCUSSION

¶ 11. On appeal Henrikson contends the court applied an incorrect legal standard in two respects: (1) it required evidence of both malicious intent *and* intentional disregard of his rights, whereas WIS. STAT.

§ 895.85(3)[4] requires one *or* the other, and (2) it relied on *Kehl*, which is no longer good law. Henrikson asserts there is evidence of Strapon's intentional disregard of his rights in that Strapon deliberately drank and drove, and there is evidence that his conduct was aggravated. Even if *Kehl* is still good law, Henrikson contends, the court nonetheless erred in granting summary judgment because there is evidence that Strapon's act of fleeing was not separate from the accident and that Strapon's fleeing caused Henrikson's injuries.

¶ 12.　Strapon responds that the circuit court applied the correct legal standard for punitive damages and correctly concluded that, based on the undisputed facts, this standard was not met.

¶ 13.　We review a circuit court's grant of summary judgment de novo, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). Summary judgment is appropriate when the affidavits and other submissions show that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). In evaluating the affidavits and other submissions, we draw all reasonable inferences from the evidence in the light most favorable to the non-moving party. *Burbank Grease Servs. v. Sokolowski*, 2006 WI 103, ¶ 40, 294 Wis. 2d 274, 717 N.W.2d 781.

I.　Legal Standard for Punitive Damages

A.　WIS. STAT. § 895.85(3)

¶ 14.　WISCONSIN STAT. § 895.85(3) provides:

---

[4] WISCONSIN STAT. § 895.85(3) (2003–04) is now numbered WIS. STAT. § 895.043(3) (2005–06) but is otherwise exactly the same.

(3) Standard of conduct. The plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff.

■

¶ 15. In *Strenke*, 279 Wis. 2d 52, ¶ 2, the supreme court considered "[w]hat proof is required for a plaintiff to recover punitive damages under the [statutory] phrase 'in an intentional disregard of the rights of the plaintiff . . . .'" The court concluded that "a person acts in an intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded." *Id.*, ¶ 3. This means, the court explained, that "an act or course of conduct [must] be deliberate[; it] must actually disregard the rights of the plaintiff, whether it be a right to safety, health or life, a property right, or some other right[; and it] must be sufficiently aggravated to warrant punishment by punitive damages." *Id.*, ¶ 38. The court also explained that, in enacting this standard, the legislature intended to create a higher standard than that at common law. *Id.*, ¶¶ 22–23, 39. Circuit courts are to serve as "gatekeepers" before sending a question of punitive damages to the jury. *Id.*, ¶ 40.

¶ 16. Although the court was not focusing on the meaning of "acted maliciously" in WIS. STAT. § 895.85(3), it noted that at common law that phrase, in the context of punitive damages, meant "acts are malicious when they are the result of hatred, ill will, a desire for revenge, or inflicted under circumstances where insult or injury is intended." *Strenke*, 279 Wis. 2d 52, ¶ 26 (citations omitted).

¶ 17. Henrikson is correct that WIS. STAT. § 895.85(3) requires evidence of either malicious con-

duct *or* intentional disregard of the rights of the plaintiff, and Strapon does not argue otherwise. The parties' disagreement is over whether the circuit court actually applied this standard. In contending that the circuit court did not, Henrikson relies on this statement he quotes by the court, adding the following emphasis: "But, I think when you look at this situation that you have to look at the plaintiff as acting, first of all maliciously towards—excuse me. The defendant acting maliciously towards the plaintiff. *And then also or furthermore* the intentional disregard of the rights of the plaintiff . . . ." Although this phrasing may not be clear, we are satisfied from our reading of the record that the court understood that these are alternative requirements. Both parties set forth the correct statutory standard in their circuit court briefs. Henrikson's argument, both in his brief and in oral argument before the circuit court, focused on the requirement of intentional disregard of the rights of others, and that is what the circuit court concerned itself with, relying on *Strenke's* articulation of what that standard entailed. Nothing suggests that the circuit court believed Henrikson had to show both malicious conduct by Strapon and an intentional disregard of his rights.

██

¶ 18. However, even if the circuit court were mistaken on this point, it is not grounds for reversal as Henrikson asserts. The circuit court concluded that, based on the undisputed facts, Strapon had not shown an intentional disregard of Henrikson's rights under *Strenke*. Because Henrikson did not argue that Strapon acted maliciously, whether the court believed that it was an additional or an alternative requirement did not affect the court's analysis of the intentional disregard requirement. Moreover, because our review is de novo,

235

our review is unaffected by whether the court had a mistaken view that malicious conduct was an additional rather than an alternative requirement. We apply the correct legal standard and we decide de novo whether there are disputed issues of fact material to the application of that standard. Because Henrikson argues on appeal, as he did in the circuit court, that Strapon intentionally disregarded his rights, that is the standard from Wis. Stat. § 895.85(3) we apply, as articulated in *Strenke*.

¶ 19. We next consider the parties' dispute concerning *Kehl*. In *Kehl*, the plaintiff suffered injuries in an automobile collision and after the collision the driver of the other car drove away. 147 Wis. 2d at 533. The parties agreed that the plaintiff's damages were not caused or aggravated by the defendant's fleeing. *Id.* The jury found that the defendant's conduct in leaving the scene of the accident was " 'wilful, wanton or in reckless disregard' of [the plaintiff's] rights" and it awarded punitive damages.[5] *Id.* The question presented to us was "[c]an punitive damages be awarded for conduct that, though related to the transaction underlying a plaintiff's recovery for actual damages, did not cause or contribute to the plaintiff's loss[?]" *Id.* We concluded the plaintiff could not recover punitive damages. *Id.* We reasoned that the fleeing was a "separate volitional act" from the collision, which therefore "had the potential to spawn a separate claim had it aggravated [the plaintiff's] inju-

---

[5] Prior to the enactment of Wis. Stat. § 895.85 by 1995 Wis. Act 17, § 3 the common law standard for punitive damages was that the person's conduct was outrageous, meaning that the person "acted either maliciously or in wanton, willful and in reckless disregard of the plaintiff's rights." *Strenke v. Hogner*, 2005 WI 25, ¶ 15, 279 Wis. 2d 52, 694 N.W.2d 296 (citations omitted).

ries or caused new harm." *Id.* at 535. However, we stated, because there was no damage caused by the fleeing, the plaintiff did not have a separate tort claim based on the fleeing; and because she could not recover compensatory damages against the defendant for leaving the scene, she could not recover punitive damages. *Id.* at 537.

¶ 20. The circuit court here relied on *Kehl* in reasoning that, because there was no evidence that Strapon's fleeing caused injury to Henrikson, that conduct could not be included in determining whether Strapon's conduct met the "intentional disregard of the plaintiff's rights" standard. Henrikson contends *Kehl* does not apply because subsequent cases have "obviated" the requirement of actual damages and, alternatively, because the facts here are distinguishable from those in *Kehl*.

¶ 21. In support of his argument that *Kehl* is no longer a correct statement of the law, Henrikson first relies on this language from *Strenke*, adding the emphasis: *"The statute says nothing about 'injury,' or 'harm,'* intentional or otherwise. Instead, it simply requires that the defendant engaged in conduct that constituted a 'disregard of rights' that was 'intentional.' "* 279 Wis. 2d 52, ¶ 20 (citation omitted). The issue the *Strenke* court addressed was whether the statutory language of "intentional disregard of the rights of the plaintiff" means that there must be an intent to cause injury. *See id.,* ¶¶ 19–37. The court concluded the language does not mean this, but instead means there must be an intent to disregard the rights of others. *See id.* In ruling out a construction that requires an intent to cause injury, the court did not address the issue we decided in *Kehl*: whether conduct may be a basis for an award of punitive damages when it is

237

related to the transaction underlying a plaintiff's recovery for compensatory damages but does not cause injury or contribute to the loss.

¶ 22. Henrikson also relies on *Jacque v. Steenberg Homes*, 209 Wis. 2d 605, 617, 563 N.W.2d 154 (1997), in which the supreme court held that the general rule that punitive damages may not be awarded in the absence of compensatory damages does not apply when the tort is an intentional trespass to land. The court arrived at this conclusion after "[a]n examination of the individual interests invaded by an intentional trespass to land, and society's interests in preventing intentional trespass to land . . . ." *Id.* Henrikson does not develop an argument that explains why the court's reasoning in *Jacque* renders *Kehl* no longer binding precedent. We therefore do not consider *Jacque* further.

¶ 23. Finally, Henrikson contends that Wis JI—Civil 1707.1 supports his position that *Kehl* is no longer good law. He points to the portion of the instructions stating that, once the jury has decided that punitive damages should be awarded, one of the factors it may consider in deciding how much to award is "the potential damage which might have been done by such acts as well as the actual damage[.]" Wis JI—Civil 1707.1. However, the instruction earlier states that the jury may not award any punitive damages "unless you have awarded compensatory damages." *Id.* This latter statement is consistent with *Kehl*; and the statement Henrikson cites to, directed as it is to the *amount* of punitive damages, is not inconsistent with *Kehl*.

¶ 24. In summary, we conclude that *Kehl* has not been overruled or modified by the cases Henrikson relies upon.

¶ 25. Henrikson argues that, even if *Kehl* is still good law, it is inapplicable in this case because it applies only when fleeing from the scene of the accident is a separate volitional act and here Strapon's fleeing cannot be separated from his conduct in hitting Henrikson. In making this argument, Henrikson relies on Hensley's statement in his affidavit that Strapon did not brake or slow down upon striking Henrikson and, had he braked, Henrikson would not have received injuries from being "flung . . . into the middle of the intersection." Apparently, Henrikson views Strapon's failure to brake or slow down upon hitting him as fleeing the scene. We do not agree with this premise. Strapon's act of leaving the scene of the accident is distinct from his conduct immediately following his striking Henrikson while still at the scene. We see no basis in the record here, viewing it most favorably to Henrikson, for concluding that Strapon's act of leaving the scene of the accident was not a separate and volitional act, just as was the act of the defendant in *Kehl*. Therefore, we conclude *Kehl* is not distinguishable on this ground.

¶ 26. We address Hensley's affidavit further in the next section. At this point, we conclude that *Kehl* remains binding precedent and is applicable in this case to the extent Henrikson seeks to rely on Strapon's act of fleeing the scene as a basis for punitive damages.[6]

---

[6] In *Kehl v. Economy Fire & Casualty Co.*, 147 Wis. 2d 531, 433 N.W.2d 279 (Ct. App. 1988), our analysis was based on considering the act of fleeing from the scene as a potential basis for a separate tort. This approach apparently was related to the fact that the jury was asked a separate and specific question on the act of fleeing, which is not the case here. *See id.* at 533. We recognize that here Henrikson seeks to have Strapon's act of

## II. Application of Legal Standard

¶ 27. The evidence here, viewed most favorably to Henrikson, shows that Strapon drove his vehicle after having consumed an amount of alcohol that resulted in a blood alcohol concentration of .111, which is .031 over the legal limit. *See* WIS. STAT. § 340.01(46m)(a). Henrikson argues that this shows deliberate conduct by Strapon that was in disregard of Henrikson's right to safely cross the street, and it was sufficiently aggravated to warrant punishment by punitive damages. The evidence showing aggravated conduct, according to Henrikson is: he did not yield to a flashing red traffic signal, in violation of WIS. STAT. § 346.39(1); he did not see or yield to a pedestrian in the crosswalk, in violation of WIS. STAT. § 346.23; he did not stop or slow his vehicle after he first struck Henrikson; he fled the scene; and he pleaded to criminal charges.

¶ 28. *Strenke* establishes that the conduct giving rise to punitive damages need not be directed at the specific plaintiff, 279 Wis. 2d 52, ¶ 51, and that, in the appropriate case, drunk driving may support an award for punitive damages. *Id.*, ¶¶ 53–54. In *Strenke*, the defendant drank sixteen to eighteen twelve-ounce containers of beer in a five-hour span and then drove on the highway, turning left as he approached an intersection into the path of the plaintiff's oncoming vehicle. *Id.*, ¶¶ 5, 8. The defendant's blood alcohol content was .269% and he pleaded no contest to operating a vehicle while intoxicated, fifth offense. *Id.*, ¶ 6. The court held

---

fleeing considered, along with other conduct, as a basis for punitive damages for one claim of negligence. However, Henrikson does not present a developed argument that explains why this is permissible if *Kehl* remains good law, as we have concluded it does.

there was sufficient evidence that the defendant was aware that his conduct was substantially certain to cause a disregard of the plaintiff's rights. *Id.*, ¶ 54. In reaching this result, the court concluded that the conduct of drinking sixteen to eighteen twelve-ounce containers of beer and then driving was deliberate and that it disregarded the rights of the plaintiff and all motorists on the road to safely use the highway, as confirmed by the defendant's blood alcohol content. *Id.*, ¶¶ 55, 56. The court also concluded that the defendant's conduct was sufficiently aggravated to warrant punishment by punitive damages because of his four prior convictions and the amount of beer he had consumed. *Id.*, ¶ 57.

¶ 29. In this case, there is no evidence that Strapon acted with a purpose to disregard Henrikson's rights. We therefore examine whether there is evidence that Strapon was aware that his conduct was substantially certain to result in the disregard of Henrikson's rights. We agree with Henrikson that there is evidence that Strapon deliberately drank alcohol and drove his vehicle. Whether this conduct disregarded Henrikson's right to safety in crossing the street depends to a large degree on how much alcohol Strapon consumed: the amount of alcohol determines how impaired Strapon was, and thus, how much of a danger he posed to pedestrians crossing the street.

¶ 30. No evidence of how much alcohol Strapon consumed has been brought to our attention. A blood alcohol concentration of .111 is .031 is over the legal limit for a person with no prior convictions, like Strapon. *See* Wis. Stat. § 340.01(46m)(a). This is a relatively modest amount above the legal limit. Even if we were to conclude that there is a reasonable inference from this blood alcohol concentration that Strapon's

ability to drive safely was sufficiently impaired to actually be a threat to the safety of pedestrians and thus to disregard their right to safety, it is not reasonable to infer from this blood alcohol concentration in itself that Strapon was aware that his driving was substantially certain to result in the disregard of the rights of pedestrians, including Henrikson, to safely cross the street. This is in contrast to the facts in *Strenke*, where there was evidence of how much the defendant drank, and the amount was great enough to provide a reasonable basis for inferring that the defendant was aware that his ability to drive safely was sufficiently impaired to be a threat to the safety of other motorists. *See Strenke*, 279 Wis. 2d 52, ¶ 56. Also, in contrast to a blood alcohol concentration of .269%, a blood alcohol concentration of .111% is not so high as to provide a reasonable basis for inferring that Strapon knew he was impaired from alcohol to a degree that made his driving a threat to the safety of pedestrians.

¶ 31. As for the evidence that Strapon did not stop at the flashing red signal and that he hit Henrikson while he was in the crosswalk, it is reasonable to infer from this that Strapon's ability to drive safely was actually impaired by the consumption of alcohol. However, it is not reasonable to infer from this evidence that Strapon was aware that his driving after he left the tavern was substantially certain to result in the disregard of Henrikson's or other pedestrians' rights to safety. In addition, we do not agree with Henrikson that this is aggravated conduct within the meaning of the punitive damages standard because it involves violations of traffic laws relating to flashing red signals and yielding to pedestrians. Most traffic accidents involve a violation of some traffic law.

¶ 32. The conviction for reckless driving also does not provide a reasonable basis for inferring the requisite awareness by Strapon. Wisconsin Stat. § 346.62(2) prohibits "endanger[ing] the safety of any person or property by the negligent operation of a vehicle." A conviction of this charge requires proof beyond a reasonable doubt that a defendant's operation of a vehicle in a manner amounting to criminal negligence endangered the safety of a person or property. Wis JI—Criminal 2650. Criminal negligence means the "defendant should have realized that the conduct created a substantial and unreasonable risk of death or great bodily harm to another." *Id.* "Should have realized" that conduct created the prescribed risk requires a lesser degree of awareness than that required for punitive damages under the "aware that [one's conduct was] substantially certain . . ." standard. *See Strenke,* 279 Wis. 2d 52, ¶ 3.

¶ 33. We next examine the evidence that Strapon did not brake or slow down after he first hit Henrikson. This might well be evidence of aggravated conduct if there were evidence, or reasonable inferences from the evidence, that Strapon could have braked or slowed down after he hit Henrikson in the knee but before Henrikson was forced onto the hood of the car and then thrown into the street. Hensley's affidavit provides no details from which one could reasonably infer that Strapon could have braked or slowed down quickly enough to have avoided Henrikson's being forced onto the hood of the car after Strapon hit him in the knee. Hensley avers that Strapon was driving twenty-five to thirty miles per hour. Without more details from an observer of the accident or, possibly, expert testimony, a

reasonable jury could not conclude that, after striking Henrikson, Strapon could have braked or slowed down soon enough to avoid injury in addition to that resulting from the impact with Henrikson's knee. Without evidence that Strapon could have avoided this, we conclude that his not braking or slowing down after striking Henrikson is not evidence of aggravated conduct for purposes of punitive damages.

¶ 34. Finally, we turn to the evidence that Strapon fled the scene. Under *Kehl*, Henrikson may not rely on this conduct as a basis for punitive damages unless Strapon's act of fleeing the scene caused or contributed to Henrikson's injuries. We agree with the circuit court that there is no evidence that Strapon's fleeing the scene caused an injury to Henrikson or aggravated any injury he received from being hit by Strapon's car and thrown into the street. Accordingly, the circuit court correctly decided that Strapon's act of fleeing the scene could not properly be considered as an aggravating factor for purposes of punitive damages. The same is true of the hit-and-run conviction resulting from that conduct.

¶ 35. We conclude that the evidence, viewed most favorably to Henrikson, does not entitle him to a trial on punitive damages. The court in *Strenke* made very clear that "not every drunk driving case will give rise to punitive damages." 279 Wis. 2d 52, ¶ 42. The evidence, including the reasonable inferences therefrom, viewed most favorably to Henrikson, shows that Strapon's consumption of alcohol impaired his ability to drive safely and resulted in his hitting and injuring Henrikson. However, neither the blood alcohol concentration of .111 nor the evidence of Strapon's driving nor the circumstances of the accident permits a reasonable

inference that Strapon either had a purpose to disregard Henrikson's rights or was aware that his acts were substantially certain to result in Henrikson's rights being disregarded.

## CONCLUSION

¶ 36. We conclude the circuit court applied the correct legal standard for punitive damages. We also conclude that, viewing the evidence most favorably to Henrikson, there is no evidence that Strapon acted in intentional disregard of Henrikson's rights. We therefore affirm.

*By the Court.*—Order affirmed.