The CAPITAL TIMES COMPANY and Mike Miller,
Plaintiffs-Appellants,

v.

James E. DOYLE and Susan Crawford,
Defendants-Respondents.

Court of Appeals

*No. 2010AP1687. Submitted on briefs August 3, 2011.
—Decided September 28, 2011.*

2011 WI App 137

(Also reported in 807 N.W.2d 666.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert J. Dreps* and *Monica Santa Maria* of *Godfrey & Kahn, S.C.* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Steven P. Means* and *Abigail C.S. Potts*, assistant attorney generals, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Reilly, J., and Hoover, P.J.

¶ 1. BROWN, C.J.   In a civil cause of action, The Capital Times Company and Mike Miller sued former Governor James Doyle and his record custodian for allegedly violating Wisconsin's open records law and sought punitive damages because of alleged arbitrary and capricious delay. According to the complaint, the Governor's office[1] failed to respond to a June 4, 2009 request for letters regarding nine judicial candidates until July 8, 2009, ninety minutes before the Governor announced his appointments. The Newspaper brought this civil suit on July 30, 2009, twenty-two days after the requested documents were released. The trial court dismissed the Newspaper's complaint after concluding that the Newspaper needed to have timely filed a writ of mandamus in order to obtain relief. We agree and

---

[1] We will refer to the respondents as the "Governor's office" and the appellants as the "Newspaper" for ease of reference.

affirm. Wisconsin Stat. § 19.37 (2009–10)[2] exclusively lists mandamus as the vehicle by which open records law is enforced by our courts.

¶ 2.  In this lawsuit, the Newspaper sought punitive damages under Wis. Stat. § 19.37(3), which states that "[i]f a court finds that an authority or legal custodian . . . has arbitrarily or capriciously denied or delayed response to a request . . . the court may award punitive damages to the requester." The Governor's office successfully moved to dismiss at the trial level on the basis that the only vehicle to § 19.37(3) punitive damages is a § 19.37(1) mandamus action. The Newspaper makes two arguments in its brief: (1) that mandamus is not the only cause of action allowed under § 19.37 and (2) that the Governor's office should be equitably estopped from asserting its defense. As we explain below, the dispositive issue for both of the Newspaper's arguments is whether requesters may file an ordinary civil action seeking punitive damages instead of using the mandamus procedure outlined in our state's open records statutes. *See* § 19.37(1).

¶ 3.  This case requires us to apply undisputed facts to Wis. Stat. § 19.37, which governs causes of action against public officials who "withhold[] a record . . . or delay[] granting access to a record . . . after a written request for disclosure is made." Statutory interpretation is a question of law that we review de novo. *Zellner v. Cedarburg Sch. Dist.*, 2007 WI 53, ¶¶ 16–17, 300 Wis. 2d 290, 731 N.W.2d 240. If the statute's meaning is plain, as it is here, we stop there

---

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

and do not consult extrinsic sources. *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶¶ 45–46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 4. We begin by reviewing the complete text of Wis. Stat. § 19.37. *See Kalal*, 271 Wis. 2d 633, ¶ 45. Subsection (1), titled "Mandamus," explains that there are two alternative ways to seek enforcement of the law and requesters may pursue either or both alternatives. First, a requester may bring a mandamus action asking for a court order to release the record. Sec. 19.37(1)(a). Second, the requester may request either the district attorney or the attorney general to bring the mandamus action. Sec. 19.37(1)(b). Subsection (2), titled "Costs, fees and damages," outlines awards of attorney's fees, actual costs, and damages for "requester[s] . . . [who] prevail[] in whole or in substantial part in any action filed under sub. (1)." Subsection (2)(b) explains how the court can also award actual damages in some circumstances if the authority acted in a willful and intentional manner. Subsection (3), titled "Punitive damages," reads as follows:

> If a court finds that an authority or legal custodian under [Wis. Stat. §] 19.33 has arbitrarily and capriciously denied or delayed response to a request or charged excessive fees, the court may award punitive damages to the requester.

Subsection (4), titled "Penalty," outlines forfeitures that are "enforced by action on behalf of the state by the attorney general or by the district attorney of any county where a violation occurs."

¶ 5. The Newspaper claims that Wis. Stat. § 19.37 contains four different methods of enforcement: the two alternative mandamus actions described in subsec. (1), an action for punitive damages under subsec. (3),

and an action by the State for forfeitures under subsec. (4). However, the plain language of § 19.37 is clear to us, as we explained in *State v. Zien*, 2008 WI App 153, ¶¶ 34–35, 314 Wis. 2d 340, 761 N.W.2d 15:[3]

> Applying these legal standards, we conclude that the plain language of Wis. STAT. § 19.37(1) outlines two distinct courses of action when a records request is denied. First, a requester who is denied access to records may proceed with his or her own mandamus action, "asking a court to order release of the record." Section 19.37(1)(a). If the requester of records who originally sought the records pursuant to Wis. STAT. § 19.35(1)(a) elects to proceed under § 19.37(1)(a), the potential remedies include access to the records and the recovery of costs, attorney fees, actual damages and punitive damages. *See* § 19.37(1)(a), (2)(a) & (3).

> If a requester instead decides to seek the assistance of the attorney general or district attorney, the attorney general or district attorney "may bring such an action." *See* Wis. STAT. § 19.37(1)(b). If an authority or legal custodian of records has acted arbitrarily and capriciously, he or she may be required to forfeit "not more than $1,000," and this forfeiture "shall be enforced by action on behalf of the state by the attorney general or ... district attorney." *See* § 19.37(4). The statute continues: "In actions brought by the attorney general, the court shall award any forfeiture recovered together with reasonable costs to the state." *Id.*

¶ 6. In other words, in *Zien* we recognized that Wis. STAT. § 19.37(1) explains how requesters may file a mandamus action on their own behalf, or they may ask

---

[3] *State v. Zien*, 2008 WI App 153, ¶¶ 34–35, 314 Wis. 2d 340, 761 N.W.2d 15, is not dispositive because it addresses standing in the causes of action available under Wis. STAT. § 19.37(1), without addressing the possible existence of other causes of action created by other subsections.

the district attorney or attorney general's office to file a mandamus action, or they may do both. *Zien*, 314 Wis. 2d 340, ¶ 23. Then § 19.37(2)-(4) lay out the remedies available in the § 19.37(1) action. Subsections (2) and (3) make certain remedies available to "requester[s]" and that must mean "requesters" referred to under § 19.37(1)(a). *See generally Zien*, 314 Wis. 2d 340, ¶¶ 34–35. Subsection (4) explicitly limits itself to actions filed by the State, so it must apply to actions filed under § 19.37(1)(b). *See generally Zien*, 314 Wis. 2d 340, ¶¶ 34–35. While we were not called upon to say so in *Zien*, it is additionally clear to us that subsec. (1) outlines the exclusive means by which requesters may obtain punitive damages under § 19.37(3)—mandamus.[4]

¶ 7. While we conclude that WIS. STAT. § 19.37 unambiguously limits § 19.37(3) punitive damages claims to mandamus actions, we note that such a conclusion rests comfortably aside well-established punitive damages law. First, we note that punitive damages in civil cases are generally only available as part of a cause of action for actual damages because "without damage or injury, culpable conduct does not give rise to a cause of action." *See Kehl v. Economy Fire & Cas. Co.*, 147 Wis. 2d 531, 534, 433 N.W.2d 279 (Ct. App. 1988) (quoting *Wussow v. Commercial Mechanisms, Inc.*, 97 Wis. 2d 136, 150, 293 N.W.2d 897 (1980)). Plaintiffs must allege the underlying cause of action, request and prove actual damages, and request punitive damages

---

[4] In its brief, the Governor's office argues that WIS. STAT. § 19.37(4) "is the only subsection that creates a cause of action beyond what is allowed in subsection (1)." It is not necessary for us to decide whether subsec. (4) creates a cause of action outside of subsec. (1), and we do not address that issue in this opinion, although we have our doubts.

based on the conduct that caused the actual damages. *See Henrikson v. Strapon*, 2008 WI App 145, ¶ 34, 314 Wis. 2d 225, 758 N.W.2d 205 (explaining that fleeing the scene after a car accident may not be a basis for punitive damages unless the fleeing contributed to the plaintiff's injuries). Then, as our supreme court has repeatedly stated, punitive damages may not be awarded without a threshold award of actual damages. *See Groshek v. Trewin*, 2010 WI 51, ¶ 29, 325 Wis. 2d 250, 784 N.W.2d 163.[5] In other words, both actual and punitive damages are decided by one fact finder (usually a jury) unless, by some procedural quirk, the actual damages issue and the punitive damages issue are bifurcated.[6]

¶ 8. The Newspaper point-blank asserts that the requester does not have to first obtain a finding of actual damages as a condition precedent to a punitive damages award. Rather, the requester can skip having to seek actual damages altogether and assert only punitive damages. And although the Newspaper did not so claim, the

---

[5] *See also Widemshek v. Fale*, 17 Wis. 2d 337, 340, 117 N.W.2d 275 (1962) ("With respect to punitive damages, we have held that actual damage must have been suffered before an award of punitive damages can be given."); *Tucker v. Marcus*, 142 Wis. 2d 425, 438–39, 418 N.W.2d 818 (1988) ("A general and perhaps almost universally accepted rule is that punitive damages cannot be awarded in the absence of actual damage.").

[6] We could find no Wisconsin case law addressing whether compensatory and punitive damages may be bifurcated. We did find a certification of that issue to the supreme court where the supreme court took the case but did not reach that issue. *See Strenke v. Hogner*, 2005 WI 25, ¶ 2 n.3, 279 Wis. 2d 52, 694 N.W.2d 296. We also found a case where the trial court had bifurcated compensatory and punitive damages. *See Mews v. Beaster*, 2005 WI App 53, ¶ 4, 279 Wis. 2d 507, 694 N.W.2d 476. That case did not address whether bifurcation is proper, but it shows that it has been done.

logical extension of its WIS. STAT. § 19.37(3) stand-alone argument is that a requester could actually begin a mandamus action, seeking a finding of a violation, costs and actual damages and then, in a separate civil suit, seek punitive damages. Thus, presumably, the requester could obtain a finding of a violation and perhaps costs and actual damages by one fact finder and a finding of punitive damages by a different fact finder for the same violation. The Newspaper asks us to believe that the legislature intended a stand-alone punitive damages cause of action without the legislature having explicitly announced such a wholesale departure from the accustomed process.[7] We reject the Newspaper's interpretation. We are convinced, by reading the clear language of the statute, that the legislature crafted an efficient procedure whereby the mandamus court would mimic what courts do in civil suits. The mandamus court decides whether there is a violation and, if so, whether it caused actual damages. Then, the mandamus court may consider whether punitive damages should be awarded under § 19.37(3).

¶ 9. The Newspaper dismisses the relevance of long-standing case law regarding punitive damages by pointing out that "it is plainly within the legislature's

---

[7] One example of the legislature specifying a departure from accustomed process is our restitution statute, WIS. STAT. § 973.20. The statute lays out in detail how criminal courts are to deal with restitution. Yet, despite this, the legislature expressly allowed civil suits to be maintained apart from this procedure. Section 973.20(8) states as follows: "Restitution ordered under this section does not limit or impair the right of a victim to sue and recover damages from the defendant in a civil action." This example shows that the legislature knows it can depart from its carefully thought out scheme and specifically allow citizens to use an alternative means of seeking redress.

authority to 'have provided an exception to the compensatory damages requirement for punitive damages, if it intended that result,' when crafting a remedial statute." *See C & A Invs. v. Kelly,* 2010 WI App 151, ¶ 10, 330 Wis. 2d 223, 792 N.W.2d 644. We absolutely agree that the legislature may craft a procedure wholly different than the process used in civil cases. *See id.* But we disagree that it did so here.

¶ 10. As the Governor's office points out, the legislature is presumed to act with knowledge of the state of the law when it enacts legislation.[8] *See Eau Claire Cnty. v. General Teamsters Union Local No. 662,* 228 Wis. 2d 640, 646, 599 N.W.2d 423 (Ct. App. 1999), *aff'd,* 2000 WI 57, 235 Wis. 2d 385, 611 N.W.2d 744. This includes Wisconsin law regarding punitive damages. If the legislature had wanted to create a total departure from the time-honored and well-considered sequence used in the common law, it would have said so in certain terms.

¶ 11. The Newspaper also contends that welding a punitive damages claim to a mandated finding of actual damages as a condition precedent ignores the statute's plain language because WIS. STAT. § 19.37(2)—allowing costs and actual damages—makes explicit reference to § 19.37(1), but § 19.37(3), the punitive damages portion, makes no such reference.[9] It claims that

---

[8] WISCONSIN STAT. §§ 19.31–19.39 were created by 1981 Wis. Laws, ch. 335, § 14, so case law stating that punitive damages could not be awarded without a threshold award of actual damages was already in existence. *See Widemshek,* 17 Wis. 2d at 340.

[9] The Newspaper makes another plain language argument —that our interpretation of WIS. STAT. § 19.37(3) ignores the reference in subsec. (3) to officials who have "arbitrarily and capriciously denied *or delayed*" response to a request for

the explicit reference in § 19.37(2) would be rendered superfluous under the interpretation we adopt. *See Kalal*, 271 Wis. 2d 633, ¶ 46 (statutes must be interpreted to avoid surplusage). We do not agree. Given the state of the common law regarding punitive damages, it would have been both unnecessary and redundant for the legislature to reference § 19.37(1) explicitly in § 19.37(3), because actual damages are a logical condition precedent to punitive damages and if actual damages relate back to subsec. (1), then so do punitive damages under § 19.37(3).

¶ 12.   As we mentioned at the outset, the Newspaper alternatively argues that even if WIS. STAT. § 19.37 does not provide a separate cause of action for punitive damages, the Governor's office should be equitably estopped from defending "on the grounds that the Newspaper's action is untimely." Presumably, this is based on the contention that the Newspaper relied, to its detriment, on what turned out to be an allegedly bogus excuse for not coming forth with information that the public had a right to know. But this claim blows up at the very start because it is founded on a misstatement of the defense employed by the Governor's office. The defense was not that the action was untimely. Rather, it was that the cause of action the Newspaper filed—a civil action for punitive damages under § 19.37(3)—does not exist.

¶ 13.   Perhaps what the Newspaper is really arguing is that it should be allowed to begin a civil suit

records. (Emphasis added.) We find this argument particularly absurd. Section 19.37(1) also references authorities "withhold-[ing] a record . . . *or delay[ing]* granting access to a record" as a precursor for the mandamus actions outlined. (Emphasis added.) So obviously, the legislature contemplated mandamus as a possible answer to delays as well as denials.

553

instead of mandamus because of the unclean hands of the Governor's office. But, if this is the real argument, it too fails. As the Governor's office points out, estoppel cannot be used to create a cause of action where there was otherwise none. *See Utschig v. McClone*, 16 Wis. 2d 506, 509, 114 N.W.2d 854 (1962) ("[E]stoppel operates always as a shield, never as a sword."). And, if this is the Newspaper's bottom-line argument, then it is exactly what the Newspaper is attempting to do—justify its otherwise impermissible lawsuit on the grounds that the Governor's office should be precluded from arguing against its right to exist. Under either theory, the Newspaper cannot use estoppel.

¶ 14.   We note that much of the Newspaper's brief is devoted to the potential injustice of penalizing its reliance on the Governor's office's assertion that there was a legal justification for a delay. It argues that a holding against it in this case undermines the open records statute's purpose of encouraging voluntary compliance by government officials, *see Eau Claire Press Co. v. Gordon*, 176 Wis. 2d 154, 159, 499 N.W.2d 918 (Ct. App. 1993), by rewarding the Governor's office's allegedly deceptive behavior here. Once again, we think the Newspaper's argument is misplaced. If it has its facts right, then the Governor's office achieved its purpose when it successfully delayed release of the records until the day judicial appointments were made. Had the newspaper begun a mandamus action the moment the Governor's office began dragging its feet, it likely could have prevented the outcome that occurred.[10] But instead, the Newspaper waited until after

---

[10] The Newspaper complains that the supreme court "recently warned requesters not to prematurely invoke the Open Records Law's remedies" so it was not unreasonable to wait for

the documents were released and the appointments were made. Our holding does not encourage or condone noncompliance by government officials; it merely encourages timely action by requesters to force timely compliance by government officials and timely public access to records, which, after all, was the intent of the legislature. *See* Wis. Stat. § 19.31.

¶ 15. We think we understand where the Newspaper is coming from. It would like the governmental authorities and legal custodians to be exposed to damages even *after* records have been released, even if *no* mandamus action was pursued, whenever the open record holder has acted arbitrarily and capriciously. That may well be a worthy policy goal. But that policy decision, should there be one, must be made by the legislature, not this court.

*By the Court.*—Order affirmed.

the custodian to provide a written denial letter in this case. *See WIREdata, Inc. v. Village of Sussex*, 2008 WI 69, ¶ 56, 310 Wis. 2d 397, 751 N.W.2d 736. However, *WIREdata* involved a far more complex request than the one here, *see id.* ¶¶ 15–16, and the supreme court emphasized that complexity, stating that "whether an authority is acting with reasonable diligence in a particular case will depend upon the totality of the circumstances surrounding the particular request." *Id.*, ¶ 56. So the Newspaper's argument is unpersuasive.